## Robert Blackwood v. Peter Van Vleit.

*Repealing acts : Saving clause : State policy.* The language of the saving clause in a repealing act is to be construed in the light of a state policy which has existed for a quarter of a century in regard to the subject matter; and while such state policy will not prevail over a clear and distinct enactment, it may go far to explain any ambiguous or doubtful language.

*Statute construed : Saving clause : Repeal : Rule of evidence : State policy.* The saving clause of the act of 1869 (*Laws of 1869, p. 380*), repealing prior tax laws, which provides that the repeal "shall not affect any act done, sale made or right acquired," etc., is construed in the light of the state policy on the subject, to save the prior enactment which made the state tax deed *prima facie* evidence of title in the grantee.

*Statute construed : Rule of evidence : Disputing validity of tax deed.* This statutory rule of evidence, however, does not preclude the opposite party from disputing the validity of the tax deed; and the provision of the tax law of 1853 (*Laws of 1853, p. 151,* § 89), making a tax deed after it had been recorded five years "positive evidence" of a title in fee simple in the grantee, cannot apply to a tax sale made after an amendment of the tax law by which this provision was stricken out.

*Purchases at tax sales: Payment of taxes : Duty to state.* To preclude any person from making and relying upon a purchase of lands at tax sale there must be something in the circumstances of the case which imposes upon him a duty to the state to pay the tax, or something which renders it inequitable, as between himself and the holder of the existing title, that he should make the purchase.

BLACKWOOD *v.* VAN VLEIT.

*Tax purchases : Occupant : Estoppel.* The doctrine of estoppel as to the purchase at a tax sale subsequently made, by one who went into possession of land under claim of title while a tax upon it constituting a lien remained unpaid, as applied in *Lacey v. Davis, 4 Mich., 140,* is criticised.

*Duty of paying taxes on lands : Occupant : Owner.* Where lands are occupied, the occupant to whom the lands have been assessed in accordance with the requirement of the statute, owes a duty to the state to make payment; and the owner of lands unoccupied owes to the state a like duty.

*Request to charge : Payment of taxes : Occupant : Estoppel.* The refusal of a request to charge, that if the defendant went into possession of the land prior to the levy of the tax of 1854, and has since continued in possession, claiming title, he could acquire no rights under his deed for the taxes of 1854, is not error; the mere taking] of possession with claim of title before the tax is actually levied is not inconsistent with such a state of facts as would impose the duty of paying the tax upon some other person, and thus render it no more unjust or inequitable for such defendant to purchase the land for such taxes than for any third person to do so.

*Submitted on briefs July 9.     Decided July 24.*

Error to Lenawee Circuit.

*Henry M. Cheever*, for plaintiff in error.

*C. A. & S. C. Stacy*, for defendant in error.

COOLEY, J.

This is an action of ejectment in which plaintiff claims under the patent title, and defendant relies upon a tax deed given in 1856, on a sale of the lands by the county treasurer for delinquent taxes of 1854.     The questions on this record arise upon the effect of this deed, and upon the right to contest its validity after it has been on record for five years.

The statute which was in force when the sale was made (*Comp. L., 1857,* § *871*) declared the deed "*prima facie* evidence of the regularity of all the proceedings from the valuation of the land by the assessors to the date of the deed inclusive, and of title in the purchaser." The statute was amended in 1858, but it is not necessary to refer particularly to the provisions of the act of that year, further than to say that they still made the deed *prima facie* evidence of title in the grantee.     In 1869 an entire new act was passed on the subject of the assessment and collection of

taxes, which also gave like effect to the deeds given under it. This act repealed all prior acts, with a proviso that "the repeal of acts mentioned in this act shall not affect any act done, sale made or right acquired or established previous to the time such repeal shall take effect."—*Laws 1869, p. 380; Comp. L. 1871,* § *1133.*

The plaintiff claimed in the court below that by the repeal of all previous acts the rule of evidence that made the deed *prima facie* evidence of title was annulled, and as the act of 1869 only applied to proceedings had under it, the defendant was not aided by it, but was remitted to the rule that would prevail in the absence of any such statute, and must support his deed by proof of the regularity of the proceedings which culminated in it. The circuit court ruled otherwise.

An examination of the statutes will show very clearly that the legislature has never designed to do away with the provisions which render these deeds *prima facie* evidence of title. In every instance where an amendment has been made, this feature has been retained. If the rule of evidence has been abolished as to any of these deeds, it must be conceded that it has been done by inadvertence, as the rule itself has been a part of our state policy for a quarter of a century. This fact will not save the rule if an unquestionable repeal appears, but it may go far to explain any ambiguous or doubtful language. And we think the language of the saving clause in the act of 1869 is to be construed in the light of this state policy. The repeal was not to affect sales previously made. Now it may well be said that the repeal of a rule of evidence applicable to such sales would not affect the sales themselves; but the statute evidently meant not the sales as such, which indeed could not be affected by subsequent legislation, but the rights derived from such sales; and these would be very materially affected if the deeds were to be deprived of their quality as evidence of title. And when we find this quality preserved up to the time the act of 1869 took effect, and that

that act gave it to all subsequent tax conveyances, the conclusion is irresistible, that it was the intention of the legislature by the proviso to the repealing clause to preserve to the holders of previous conveyances the benefit of this rule of evidence.

We are referred to *Hickox v. Tallman, 38 Barb., 608,* as supporting the views of the plaintiff on this point, but an examination of the statute shows no such saving clause having reference to the sale then in contr oversy.

But we do not understand on what ground the court held that the plaintiff was not at liberty to dispute the validity of the tax deed. Counsel have argued the point as if it depended on the provision of the tax law of 1853 (*Laws of 1853, p. 151, § 89*), under which a tax deed, after it had been recorded five years, was to be " positive evidence " of a title in fee simple in the grantee. But this section was amended in 1855 by striking out the provision relied upon (*Comp. L., 1857, § 871*), and this being previous to the time when the sale was made, nothing could afterwards be claimed under the portion stricken out.

The plaintiff requested the court to charge the jury that if defendant went into possession of the land prior to the levy of the tax of 1854, and has since then continued in possession claiming title, he could acquire no rights under his deed for the taxes of 1854, and such deed is of no effect. This request was refused.

To preclude any person from making and relying upon a purchase of lands at tax sale, there must be something in the circumstances of the case which imposes upon him a duty to the state to pay the tax, or something which renders it inequitable, as between himself and the holder of the existing title, that he should make the purchase. It was not claimed in this case, so far as the record shows, that there were contract or other relations between Blackwood and Van Vleit that would preclude the latter from buying the former's land for delinquent taxes. If he was precluded, therefore, it must be on the ground that it was his duty

to the state to make payment, and that he is not to be suffered to build up a title on this neglect of duty. And this leads to the question what it is that imposes upon any person the duty to pay taxes upon lands.

Two cases have been decided in our reports which bear upon this question. The first is *Lacey v. Davis, 4 Mich., 140*, in which the opinion is expressed, that one who goes into possession of lands under claim of title while a tax upon it constituting a lien is unpaid, cannot acquire a title by the purchase of the land at a sale subsequently made, because the ownership he claimed, and which he is estopped afterwards from disputing, made it his duty to pay the tax. How or why or as to whom he becomes estopped from denying his ownership of the land after taking possession, we are at a loss to understand, and the case does not explain. Estoppels must be mutual, and we cannot see that any other person interested in the payment of the tax was so connected with the facts of that case as to come within the reason of the doctrine of estoppel so as to be bound by the claim of title of the party thus taking possession. Any person claiming adversely would certainly not be bound, and it is difficult to discover any other person who would be in position to raise the question in any manner. We have looked into the cases relied upon in the opinion, and find that in all of them the party who was held precluded from acquiring a title at a tax sale, was either in possession of the land when the tax was assessed, and upon that ground chargeable with its payment (*Douglas v. Dangerfield, 10 Ohio, 152; Ballance v. Forsyth, 13 How., 18; Voris v. Thomas, 12 Ill., 442; Glancy v. Elliott, 14 Ill., 456*); or by contract or otherwise it had become his duty to other parties concerned to make payment.—*Chambers v. Wilson, 2 Watts, 495.* These cases fall short of supporting the court in the position taken. And in *Blakeley v. Bestor, 13 Ill., 708*, which was cited and relied upon in the same case, it was held that the possession of a party at the time the tax was assessed did not necessarily preclude him from

buying the land at a sale to satisfy such tax, but that it was open to him to show by evidence that he occupied by such contract or under such circumstances as made it the duty of some other party to pay it. In other words, the doctrine of that case is, that while a party is not to build up a title on his own neglect of duty, yet, if he can show he owes no duty in the premises, he is as free to become purchaser at a tax sale as any other person.

Where lands are occupied, our statutes have always required them to be assessed to the owner or occupant; and, where thus assessed, it becomes a duty which the person assessed owes to the state to make payment. If not occupied, the owner owes to the state a like duty. In the present case the title Van Vleit claimed prior to the assessment was held to be void; and, consequently, there was no duty resting upon him as owner. The request under consideration does not assume that he was in possession at the time the assessment was made, but leaves the case open to the inference that possibly some other person may have then been occupant, against whom the state might have enforced the tax, and whose duty to the state it was to make payment. It may also have been assessed as non-resident; in which case the duty to pay would rest on the owner. How, in either case, the taking possession by defendant before the tax was actually levied, but after the duty to pay had become fixed on other shoulders, could transfer that duty to him, in the absence of any contract or dealings between him and such other party, rendering it equitable as between the two that he should pay, is not very clear. The obligation to the state was fixed by the assessment, and if that depended upon possession, it must be a possession then or previously existing. If, on the other hand, the plaintiff was then owner, and as such was chargeable with the tax, and if by contract or otherwise no other person had assumed this duty, it is not perceived how he can claim that a subsequent purchase by any third person is made in his interest or in discharge of his obligation, or

what ground of estóppel he can rely upon as against such purchaser. But whether or not it is possible that there can be any such grounds of estoppel under such circumstances, we are agreed that the request for instruction, which rests the case upon the mere taking of possession with claim of title before the tax is actually levied, is not inconsistent with the existence of such a state of facts as would have made it no more unjust or inequitable for this defendant to have bought the land for the taxes in question than for any third person to have done so.

The other case in our own reports bearing upon this point is *Tweed v. Metcalf, 4 Mich., 579,* in which it was held that one who has bought lands at a tax sale is not precluded from becoming purchaser at a subsequent sale made before his title has become absolute by the expiration of the time to redeem. This, it is manifest, in no way conflicts with the view we have taken. We are therefore of opinion that the court was correct in declining to give the instruction requested. But for the error in refusing to receive evidence to show the invalidity of the tax of 1853, the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.