THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY AND
JOHN HEBERT v. CHRISTIAN BULTE.

*Agency—Ejectment against later mortgagee holding under a tax-title—
Relation.*

The general attorney of an Insurance Company, after foreclosing a mortgage in its name, took a tax-deed of the property, and after the tax-title became absolute gave a quit-claim to the company which it accepted. *Held*, a recognition of his agency in making the tax purchase.

A second mortgagee who has foreclosed and bidden in the premises can obtain a tax-title to them, and if it is allowed to become absolute he has a right to use it as a defense to an action of ejectment brought by the first mortgagee, unless the latter tenders re-payment.

A tenant who has covenanted to pay the taxes cannot, after neglecting to do so, take a tax-title and cut off his landlord's rights: nor can a purchaser in possession under an executory contract so cut off his vendor's rights, nor a mortgager those of his mortgagee. A purchase made under such circumstances will be conclusively presumed to have been made in the performance of duty and not in repudiation of it.

A second mortgagee is under no obligation to protect the lien of the first mortgagee by payment of taxes or by purchasing the premises for his benefit at a tax-sale; but if he does pay or purchase, the act *ipso facto* constitutes a protection.

A mortgagee does not owe any duty to a subsequent mortgagee or to the owner, to protect the latter's lien as against tax-sales: the duty is to the State, which will sell the interest of all if neither pays.

The duty to pay taxes on mortgaged land is primarily on the mortgager, but if he makes default any mortgagee may pay, and if no one does so the land will be sold and his lien extinguished. But a payment by a mortgagee is allowed to increase the amount of his incumbrance in order to secure its re-payment by the mortgager.

A tax-deed giving a *prima facie* title constitutes at law a perfect defense to an action of ejectment.

Foreclosure cuts off a subsequent mortgage, but where the amount of a tax-purchase has been added to the later incumbrance the additional lien therefor is not extinguished with the mortgage.

A tax-title relates back from the time it becomes absolute to the time of the tax-purchase for all purposes of substantial justice, but not

45 MICH—8

| | |
|---|---|
| 45 | 113 |
| 109 | 429 |
| 45 | 113 |
| 110 | 587 |
| 45 | 113 |
| 119 | 220 |
| 119 | 387 |
| 45 | 113 |
| f126 | 90 |
| 45 | 113 |
| s7NW | 707 |
| 129 | 9348 |
| 45 | 113 |
| 136 | 692 |
| 45 | 113 |
| 140 | 3669 |
| 45 | 113 |
| 138 | 3394 |

otherwise; and it cannot be used to divest rights acquired since the period to which it would relate.

Error to Wayne.   Submitted Oct. 22.   Decided Jan. 5.

EJECTMENT.   Defendants bring error.   Reversed.

*Moore, Canfield & Warner* for plaintiffs in error.   One is not estopped from purchasing tax-titles who is under no obligation to pay the tax:   *Sands v. Davis* 40 Mich. 14; *Moss v. Shear* 25 Cal. 45; *Bowman v. Cockrill* 6 Kan. 331; *Stubblefield v. Bordus* 92 Ill. 279; Blackwell on Tax-titles (2d. ed) 400; a mortgagee can buy an outstanding title, *Ten Eyck v. Craig* 2 Hun 452: 62 N. Y. 406; *Trimm v. Marsh* 54 N. Y. 599; *Williams v. Townsend* 31 N. Y. 411.

*Geo. H. Lothrop, Edwin F. Conely* and *G. V. N. Lothrop* for defendant in error.   The attorney of a mortgagee who has foreclosed in the mortgagee's name cannot take a tax-title on the property, and if he does so, must deed to his client: *Matthews v. Light* 32 Me. 305; *Oldhams v. Jones* 5 B. Monr. 458; *Krutz v. Fisher* 8 Kan. 90; *Bernal v. Lynch* 36 Cal. 135; *McMahon v. McGraw* 26 Wis. 614; *Barton v. Moss* 32 Ill. 50; *Schedda v. Sawyer* 4 McLean 181; *Jewett v. Miller* 10 N. Y. 402; *Linsley v. Sinclair* 24 Mich. 380; *Bartholemew v. Leech* 7 Watts 472; title cannot be obtained by a tax purchase made by the owner, after neglecting to pay the tax, for the purpose of divesting the interest of a grantee or mortgagee: *Jones v. Davis* 24 Wis. 229; *Swift v. Agnes* 33 Wis. 228; *Woodburn v. Farmers & Mech. Bk.* 5 W. & S. 447; *Gardiner v. Gerrish* 23 Me. 46; *Fuller v. Hodgdon* 25 Me. 243; *Frye v. Bank of Illinois* 11 Ill. 367; *Porter v. Lafferty* 33 Iowa 254; nor by a tenant for life, to the prejudice of the reversioner: *Phelan v. Boylan* 25 Wis. 679; *Prettyman v. Walston* 34 Ill. 175; *Higgins v. Crosby* 40 Ill. 260; *Varney v. Stevens* 22 Me. 331; *Burhans v. Van Zandt* 7 N. Y. 523; *Cairns v. Chabert* 3 Edw. Ch. 312; nor by tenants for years: *Carithers v. Weaver* 7 Kans. 110; *Blake v. Howe* 1 Aikens 306; *Shepardson v. Elmore* 19

Wis. 424; nor by a tenant in common, to divest the title of others interested: *Williams v. Gray* 3 Me. 207; *Willard v. Strong* 14 Vt. 532; *Adm'rs of Downer v. Smith* 38 Vt. 464; *Brown v. Hogle* 30 Ill. 119; *Chickering v. Faile* 38 Ill. 342; *McConnel v. Konepel* 46 Ill. 519; *Busch v. Huston* 75 Ill. 343; *State v. Williston* 20 Wis. 228; *Van Horne v. Fonda* 5 Johns. Ch. 388; *Brittin v. Handy* 20 Ark. 381; *Lloyd v. Lynch* 28 Pa. St. 419; *Maul v. Rider* 51 Pa. St. 377; *Baker v. Whiting*, 3 Sumn. 475; *Roberts v. Thorn* 25 Texas 728; *Frentz v. Klotsch* 28 Wis. 312; *Flinn v. McKinley* 44 Iowa 68; *Page v. Webster* 8 Mich. 263; *Butler v. Porter* 13 Mich. 292; *Cooley v. Waterman* 16 Mich. 366; *Dubois v. Campau* 24 Mich. 360; whether a tenant in common can divest his co-tenant by purchasing a tax-title, without collusion, after it has become absolute, *quere: Lewis v. Robinson* 10 Watts 354; *Kirkpatrick v. Mathiot* 4 W. & S. 251; *Reinboth v. Zerbe Run Improvement Co.* 29 Penn. St. 139; *Roberts v. Thorn* 25 Tex. 728; *Wright v. Sperry* 21 Wis. 331; *Frentz v. Klotsch* 28 Wis. 312; *Dubois v. Campau* 24 Mich. 360; *Sands v. Davis* 40 Mich. 14; a vendee in a land contract stipulating that he shall pay the taxes, or in possession without such stipulation, cannot neglect to pay them and thereafter acquire title at the tax sale: *Gardiner v. Gerrish* 23 Me. 46; *Haskell v. Putnam* 42 Me. 244; *Coxe v. Wolcott* 27 Penn. St. 154; *Quinn v. Quinn* 27 Wis. 168; *Voris v. Thomas* 12 Ill. 442; *Glancy v. Elliott* 14 Ill. 456; *Oliver v. Croswell* 42 Ill. 41; *Miller v. Corey* 15 Iowa 166; *Hunt v. Rowland* 22 Iowa 53; nor can an occupant claiming title: *Douglas v. Dangerfield* 10 Ohio 152; *McMinn v. Whelan* 27 Cal. 300; *Coppinger v. Rice* 33 Cal. 408; *Barrett v. Amerein* 36 Cal. 324; *Garwood v. Hastings* 38 Cal. 216; *Bassett v. Welch* 22 Wis. 175; *Whitney v. Gunderson* 31 Wis. 359; *Lacey v. Davis* 4 Mich. 140; but see *Moss v. Shear* 25 Cal. 38; *Bowman v. Cockrill* 6 Kansas 311; *Blakeley v. Bestor* 13 Ill. 708; *Blackwood v. Van Vleit* 30 Mich. 118; nor can an heir prejudice the rights of others interested by taking a tax deed, where the ancestor has neglected to pay taxes: *Choteau v. Jones* 11 Ill. 300; *Piatt*

*v. St. Clair's Heirs* 6 Ohio 93 ; *Taylor v. Snyder*, Walk. Ch. 490 ; nor a purchaser from a devisee bound by the will to pay the taxes (*Chamber v. Wilson* 2 Watts 495), nor can a purchaser at an administrator's sale thus cut off a prior mortgage, *Edgerton v. Schneider* 26 Wis. 385 ; one who obtains an injunction against the enforcement of a mechanic's lien cannot meanwhile procure and assert a tax-title against the defendant (*McLaughlin v. Green* 48 Miss. 175) ; nor can one in possession of premises under execution title take a tax deed during time of redemption and assert title as against the owner : *Kelsey v. Abbott* 13 Cal. 609 ; tax-title obtained by a party in collusion with owner for the purpose of defrauding mortgage creditor, was held bad : *Hibernia Savings Society v. Ordway*, 38 Cal. 679 ; one who, in 1865, took out valid tax deeds based upon sales for the taxes of 1858 and 1861, and went into possession under them, was under no obligation to pay delinquent taxes of the years 1859 to 1864 inclusive ; and he might take deeds upon sales for such taxes, and maintain proceedings to quiet title : *Lybrand v. Haney* 31 Wis. 230 ; defendant had tax title, but went into possession under the widow of mortgager who was entitled to the possession, agreed to pay mortgage, and induced her by words and acts to suppose that he held of her until the three years' limitation had expired : *Held*, that he could not assert title : *Schumaker v. Hoeveler* 22 Wis. 43 ; where the tax is assessed on the land while the mortgagee has an interest therein, he cannot, in the event of the non-payment of such tax and the sale of the land therefor, purchase the lands at such sale, and acquire title thereby : *Smith v. Lewis* 20 Wis. 350 ; *Sturdevant v. Mather* id. 576 ; *Avery v. Judd* 21 Wis. 262 ; *Fisk v. Brunette* 30 Wis. 102 ; *Anson v. Anson* 20 Iowa 55 ; *Porter v. Lafferty* 33 Iowa 254 ; *Stears v. Hollenbeck* 38 Iowa 550 ; *Fair v. Brown* 40 Iowa 209 ; *Garrettson v. Scofield* 44 Iowa 36 ; *Brown v. Simons* 44 N. H. 475 ; *Williams v. Townsend* 31 N. Y. 411 ; if the mortgagee takes a tax deed, it operates as the payment of the tax, and inures to the benefit of all, and the mortgagee can enforce repayment by enforcing his lien therefor upon the land : Comp. L. § 1102 ;

*Williams v. Hilton* 35 Me. 547; *Mix v. Hotchkiss* 14 Conn. 32; *Brown v. Simons* 44 N. H. 475 and authorities cited: *Kortright v. Cady* 23 Barb. 491; *Rakestraw v. Brewer* 2 P. Wms. 511.

COOLEY, J.    Bulte brought ejectment against the Insurance Company and one Hebert, its tenant, to recover certain lots in the city of Detroit. The facts out of which the litigation arose are the following:

On September 14, 1872, the lots were owned by one John F. Mack.    On that day he executed to the plaintiff Bulte a mortgage on the lots for the sum of $4750, and on November 25, 1874, he gave another mortgage to the Insurance Company for $9000. Both mortgages were duly recorded. In May, 1877, the Insurance Company foreclosed its mortgage by *ex parte* proceedings and became the purchaser at the sale, and received a deed which became absolute May 26, 1878.    In October, 1877, the land was sold for delinquent state and county taxes assessed in 1876, and William A. Moore became purchaser, subject to a year's redemption. No redemption ever took place.    In December, 1877, Bulte foreclosed his mortgage by *ex parte* proceedings, became the purchaser and took a deed which became absolute December 15, 1878.    December 21, 1878, Moore gave a quit-claim deed to the Insurance Company.    His relations to the company at that time are explained in his evidence, which, being important, and all there was on the subject, is given in full.

Mr. Moore testified that he was a lawyer by profession; that he had made loans for the Connecticut Mutual Life Insurance Company since 1871; that he had been their attorney in some suits at law, and had had some suits against them; that he did considerable general business for them as attorney; that the firm of Moore, Canfield & Warner, with which he is connected, have been the attorneys for said company in many cases for six or seven years past; that he negotiated the loan to Mack from the said company; that after making said loan the papers were all sent to the office of the company at Hartford, and the money was all payable

to them there; that if the money was not paid they generally wrote him to induce collection or payment by law or persuasion; that he looked after the loans of said Insurance Company in respect to the condition of the property, taxes, etc., to see that the property was not sold, to see that the titles did not accrue in other hands against the company; that he generally bid in the lands in his own name, but by no special arrangement or anything of the kind; that he generally quit-claimed to the company when the property was sold; that he never executed a quit-claim to the company that he recollected, except this one, of any property that he ever bid in himself; that some property had been sold, and where property had been sold he conveyed to the party who purchased, by deed or assignment of the certificates, whatever was necessary; that he generally drew his own check and paid the taxes himself; that in some cases he had been re-imbursed by the company, and in some not; where the company has held title he has been re-imbursed; that for a year and a half or two years past the firm of Moore, Canfield & Warner had had the charge of the property and paid the taxes and rendered the regular accounts and the company re-imbursed them from time to time; that the mortgage came to him to be foreclosed after a portion was due; that he advertised it and conducted the proceedings to an end; that the property was advertised for foreclosure prior to the bidding in on the tax sale; that when he undertook to buy in the tax title he was conducting the business of the company in respect to foreclosing their mortgage; that in purchasing property on tax sales he would not make a title adversely to the company; that he never would have assigned to anybody else; that he purchased the tax-title because he thought under the circumstances he ought to do it; that he did not intend to create any title against the Connecticut Mutual Life Insurance Company, but that he did that as he did every other; that he did not go into the business of buying tax-titles; that he should not have permitted a title against the company; that he did not buy the title under any arrangement whatever with the company; that he did

not receive anything from the company when he quit-claimed to it.

On cross-examination witness testified that at the time of the purchase of this tax-title he had no contract or arrangement with the Connecticut Mutual Life Insurance Company with regard to the purchase of this tax-title and no understanding with them about it; that the company knew nothing about it, and that the company never made any objection to his obtaining or holding title under the tax deed; that after he had conveyed to the company he told the president that he had done so.

On redirect examination witness testified that he did not consult with the company in each particular case of a tax-title.

November 29, 1878, the Insurance Company leased a portion of the premises to Hebert, who took possession, and this suit was subsequently brought. On the trial the controversy appears to have centered entirely on the tax purchase by Mr. Moore, and the effect of the subsequent conveyance by Mr. Moore to the Insurance Company.

The following instruction, requested by the defendant, the circuit judge refused to give:

" The tax deed offered in evidence by the defendants is *prima facie* evidence of title in fee to the premises in question in William A. Moore, and the Insurance Company, as the grantee of said Moore, is entitled to assert all the title which the tax deed vested in said Moore."

The following, requested by the plaintiff, was given:

" If the jury find that at the time William A. Moore bid the premises off at tax sale, and took the tax deed, he was acting as the agent of the Connecticut Mutual Life Insurance Company, in reference to its mortgage interest in the premises, and in reference to its foreclosure by said company, and really acquired said tax bid and tax deed for the protection of the interests of said company, such tax deed vested no title or interest in Mr. Moore or in the defendants which will prevent the recovery by the plaintiff in this action."

The jury returned a verdict for the plaintiff.

The defendants, now plaintiffs in error, insist that the circuit judge wholly misapprehended the law; and that he erred both in holding that Bulte was at liberty to rely upon Moore's agency for the Insurance Company by precluding his making a purchase and acquiring a title in his own name at the tax 'sale, and also in ruling that the Insurance Company could not acquire and hold a tax-title as against a prior mortgagee.

We shall spend no time on a discussion of Mr. Moore's relations to the Insurance Company, because we think his deed to the company and the acceptance thereof was a recognition of his agency in the purchase and renders immaterial the question what would otherwise have been the rights of Bulte. It will therefore be assumed in whatever we shall say of the case, that the question of the right of a second mortgagee to rely upon a tax purchase as against the right of the first mortgagee to recover in ejectment after foreclosure, is the question, and the only question in the case.

It is conceded that there are a great many cases in which parties standing in particular relations to the land, or to the owner or other person interested therein, are not suffered to acquire tax-titles and rely upon them as against other claimants. Some of those are very plain, and it is quite unnecessary to do more than name them. A tenant for example, who has covenanted to pay the taxes cannot be suffered to neglect this duty, and then acquire a tax-title which shall cut off the title of his landlord. Neither shall the purchaser in possession under an executory contract be allowed to cut off the rights of his vendor by a like purchase, nor a mortgagor that of his mortgagee. A tax purchase made while such a relation exists is made in wrong; and the law in circumvention of dishonesty will conclusively presume that it was made in the performance of duty, and not . in reqüdiation of it. But other cases are not so plain. A tenant in common, for example, who finds his interest taxed inseparably with that of his co-tenant, may advance plausible reasons why, if he buys the whole land at the tax sale, he should be at liberty to claim title to the

whole.  His duty is limited to paying the tax on his share only; and if the co-tenant neglect to pay for himself, what right has he to demand that those who happen to have interest with him in the land shall be excluded from the number who may take advantage of his default?  The reason usually assigned for not permitting such a purchase is that the sale is based in part upon the purchaser's own default, but it is also true that in a great proportion of such cases the parties stand to each other in confidential relations; and it may without much violence to the facts be assumed that they do so in all cases.  No doubt the rule that precludes their speculating in each other's defaults is grounded on sound policy.  Still the purchaser does not lose what he pays beyond what is needful for discharging the lien upon his own interest; his co-tenants must refund to him such portion as is found to be just: *Baker v. Whiting* 3 Sumn. 476; *Burhans v. Van Zandt* 7 N. Y. 523; *Phelan v. Boylan* 25 Wis. 679; *Chickering v. Faile* 38 Ill. 342; *Anson v. Anson* 20 Iowa 55.  The purchaser is trustee for the others, but they must repay their proportion of his advances: *Lloyd v. Lynch* 28 Penn. St. 419; *Maul v. Rider*, 51 Penn. St. 377; *Flinn v. McKinley* 44 Iowa 68.

But it is possible for parties to have antagonistic claims in lands, which place them neither actually nor constructively in confidential relations.  In some such cases no doubt either is at liberty to strengthen his title as against the other by a tax purchase: *Blackwood v. Van Vleit* 30 Mich. 118.  It is claimed that a second mortgagee occupies this position in respect to the first mortgagee, and if the latter does not protect his lien by payment of the taxes or by attending as purchaser at the tax sales, the former is under no obligation to do so for him.  And it is no doubt true that he is under no obligation to protect the first mortgagee; but the real point in controversy is, whether, if the second mortgagee pay the taxes or bid off the land, the payment or purchase will not *ipso facto* constitute a protection?

It certainly cannot be said that the second mortgagee owes any duty to the first mortgagee to protect his lien as against

tax sales. Neither on the other hand does the first mortgagee owe any such duty to the second mortgagee, or to the owner. To the State each one of the three may be said to owe the duty to pay the taxes; and the State will sell the interest of all if none of the three shall pay. As between themselves, the primary duty is upon the mortgagor; but if he makes default, either of the mortgagees may pay, and one of the two must do so or the land will be sold and his lien extinguished. But in such cases, where each has the same right, payment by one is allowed to increase the amount of his incumbrance; for in no other way could he have security for its repayment by the mortgagor, who ought to protect the security he has given. When therefore each mortgagee has the same interest in making payment of the tax, and the same right to do so, and the same means of compelling repayment, it may well be held that a purchase by one shall not be suffered to cut off the right of the other, because it is based as much upon his own default as upon that of a party whose lien he seeks to extinguish. It is as just and as politic here as it is in the case of tenants in common, to hold that the purchase is only a payment of the tax.

But in equity this can only be so when the party paying is in position to add the amount of the payment to the amount of his lien. It is never held that any other person can have the benefit of the mortgagee's payment or purchase without being under any obligation to repay him the cost. *Horton v. Ingersoll* 13 Mich. 409, on which much reliance is placed, is far from so holding. In that case the owner of an interest in the equity of redemption was also owner of a tax-title. By reason of his tax title he denied the right of the mortgagee to make him defendant to a bill to foreclose. The court decided he was a proper party by reason of his interest in the equity of redemption; and there was also a *dictum* that the tax title he had purchased "simply inures to the protection, not the destruction, of the regular title." The *dictum* is sound, but it falls short of the necessities of this case.

In this case the second mortgagee had acquired a tax-title,

which became absolute in October though the deed was not obtained until December 16, 1878. This by the express provisions of the statute was *prima facie* a valid title. No doubt the first mortgagee had a right to insist that the purchase was in part for his protection, and to treat it as a payment merely; but this was at his option, and it stood as a good purchase as to all the world except as to those who might have equities in respect to it, and who should see fit in proper mode and by the observance of suitable conditions, to assert their equities. And one fundamental condition in every such case must be, that the party claiming the benefit of the purchase shall do what is equitable in respect to it.

Bulte acquired his title December 15, 1878. On the supposition, apparently, that his foreclosure had extinguished both the Insurance Company mortgage and the tax purchase, and that the tax deed was wholly inoperative as against him, Bulte brought ejectment, without tendering any repayment of the tax or of any part thereof, but leaving the whole to be borne by the Insurance Company as a total loss. Is there any equity in this? Can a principle of law which purports to be an equitable principle support his suit? Why should the Insurance Company be charged as trustee for Bulte, and required to bear the burden of the trust for a party who takes all the benefits and assumes no part of the obligations?

There is no answer to such questions. Sometimes a party by the force of circumstances is placed in a position where another may take the profit of his losses without being under obligation to make return; but the adjustment of legal rights on equitable principles is never meant to work such a result. The foreclosure of Bulte's mortgage no doubt would cut off that of the Insurance Company, but when he claims anything more than that, it is necessary to look about and see how and why he becomes entitled to it. The tax purchase was made before the sale on his foreclosure, but Moore, not the Insurance Company, was purchaser, and whatever the equities between him and the company, it cannot be pretended that Moore was obliged to resign to the company, and the company to take and pay for the tax title in order that Bulte

might obtain the benefit of it for nothing, and compel the company to add the cost to the loss of its mortgage. Moreover the purchase in Moore's hands was subject to redemption until October, 1878, by either Mack or Bulte, and it was only after time for redemption had expired that the sum paid at the tax sale could be deemed paid by the Insurance Company in satisfaction of the tax. Had redemption been made by any one, the effect upon the rights of parties respectively would be determined by the relation of the party redeeming to the title and the interests of others.

Had Bulte redeemed, the question now presented would not have arisen. He did not redeem his purchase on foreclosure and at the time his title became absolute the tax-title had become perfected. This title would relate back to the tax purchase in October, 1877, for all purposes of effecting substantial justice, but the fiction of relation will not be suffered to work a wrong: *Blackwood v. Brown* 29 Mich. 483; *Flint & Pere Marquette Railway Co. v. Gordon* 41 Mich. 420. If Bulte took the land discharged of the Insurance Company mortgage he had no shadow of claim to take it discharged of the tax purchase also. If the tax purchase attached itself to the Insurance Company mortgage as so much money, it would leave the mortgage, at least to that extent, unextinguished by the Bulte foreclosure, and if Bulte repudiated the tax purchase, and refused to recognize it as having been made for the common benefit, and made no offer to assume the expense, it would stand as a tax purchase against him. And at law, the tax deed giving a *prima facie* title, would constitute a perfect defense to the action of ejectment.

This disposes of the present suit. It seems proper to say, however, in view of all the facts, that there seems to be no difficulty in each party preserving all his equities. If Bulte claims that the tax purchase was made for the common protection of all interests in the estate, and proposes to accept all-the burdens and responsibilities that flow from that fact, the Insurance Company cannot insist upon the tax-title as a title against him. But he will make the claim for the first

time after his mortgage has been foreclosed, and the claim itself will be an admission that when the Insurance Company took the tax purchase off the hands of Moore, the amount paid went to increase its mortgage, and left it then a living and unextinguished lien.  If it was cut off, there was nothing to which to add the cost of the tax purchase, and moreover if it was cut off, the Insurance Company was no longer mortgagee, and there was no equity entitling Bulte to insist that the purchase of the tax-title was a payment of the tax. Bulte's position therefore necessitates the admission that the equity of redemption is still in the Insurance Company; for if this is denied, there is nothing to preclude the Insurance Company buying and holding a tax-title, as any mere stranger to the title might do.  The inability to do so springs from the relation of mortgagee exclusively.

The judgment must be reversed with costs and a new trial ordered.

MARSTON, C. J. and GRAVES, J. concurred.

CAMPBELL, J. did not sit in this case.