23 P.(2d) 362

## RILEY v. BANK OF COMMERCE OF ROSWELL et al.

### No. 3761.

Supreme Court of New Mexico.

June 13, 1933.

G. L. Reese, Sr., of Roswell, for appellants.

Simms & Botts, of Albuquerque, for appellee.

BICKLEY, Justice.

Action of ejectment and to quiet title by appellee against appellant. Appellants cross-complained in the statutory form for quieting their title.

The court decreed that appellee (plaintiff) was the owner of the real estate in question, and awarded the possession thereof to appellee, upon the basis that appellant Bank of Commerce was a junior mortgagee of the property in question and that the appellee was a senior mortgagee thereof and that the junior mortgagee could not acquire any title by the purchase of a tax title as against the senior mortgagee. The correctness of this theory of the decision is the principal question to be determined upon this appeal.

No question is raised as to the legality of any of the proceedings leading up to, and culminating in, a tax deed.

That, prior to foreclosure at least, appellee was the senior mortgagee is not open to question. On June 6, 1925, appellant bank sued to foreclose its second mortgage, making appellee a party defendant who timely cross-billed on her first mortgage. On September 9, 1925, final decree was entered by which the mortgage of appellee was established as prior to that of appellant, and both mortgages were ordered foreclosed. At the sale, appellee was the highest bidder for a sum insufficient to do more than pay off the first mortgage. On December 9, 1925, a special master's deed to the appellee was duly executed and delivered and recorded on January 30, 1926. On March 5, 1924, the property was sold for taxes for 1922 and a tax sale certificate was issued on the same day to Chaves county. On November 25, 1925, the appellant bank paid to the treasurer of Chaves county the sum of $220.88, and thereupon said county treasurer indorsed on said tax sale certificate a form of assignment thereof to the appellant bank. On June 2, 1927, the said county treasurer issued and delivered to the appellant bank a form of tax deed covering said property.

In Des Moines Sav. Bank & Trust Co. v. Eisenmenger (1931) 183 Minn. 46, 235 N. W. 390, it was held: "Successive mortgagees are in same category as tenants in common, as

respects payment of taxes on mortgaged premises; one of successive mortgagees purchasing at delinquent tax sale cannot acquire tax title to exclusion of another mortgagee; one of successive mortgagees purchasing at delinquent tax sale is entitled only to reimbursement and equitable lien."

The weight of authority is in favor of this view. See Cooley Taxation (4th Ed.) 1440; annotation, L. R. A. 1917D, 522: "Most states will not permit him (mortgagee) to assert a title against the mortgagor, and almost no jurisdiction will allow him to set up such title against prior mortgagees." Columbia Law Review Vol. 29, page 93, editorial note commenting on Baird v. Fischer, 57 N. D. 167, 220 N. W. 892.

We observe that the principles here announced are usually discussed as appertaining where the controversy arises between a mortgagor and a mortgagee, the mortgagee claiming adversely to the mortgagor by virtue of the purchase of a tax title, and where successive mortgagees are involved. See the cases as to both propositions digested indiscriminately in Decennial Digest under Mortgages, ⬥⟶144. See, also, Cooley on Taxation (4th Ed.) § 1440, which illustrates the same situation. In Baird v. Fischer, 57 N. D. 167, 220 N. W. 892, 894 (1928) certain property subject to two mortgages was sold at a tax sale to one X, in 1919. In February, 1923, X conveyed his tax certificate to the plaintiff, the holder of a second mortgage on the property, and in May, 1923, the plaintiff received a tax deed from the state. In January, 1923, the defendant, holder of a first mortgage there-

on, foreclosed and bought in the property, receiving a sheriff's deed in February, 1924. In an action to quiet title, it was held for the defendant and that a second mortgagee may not procure and assert a tax title as against a prior mortgagee. In the course of the discussion, the court quoted in support of its view, the case of Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855, which involved a contest between a mortgagor and a mortgagee, who claimed under a tax deed procured while he was mortgagee, as follows: "But aside from this fact (that the tax deeds were defective), the deeds cannot stand as a conveyance in favor of the defendant and against the plaintiff, because when they were obtained by Gurd he was in the relation of a mortgagee, and, as such, was given permission by the terms of the mortgage to pay taxes on the land, and add the amount so paid out to the mortgage debt. It is well established that a mortgagee, under such circumstances, is estopped to acquire title as against the mortgagor. Under such a state of facts, a trust relation arises in which the mortgagee or his grantee becomes a trustee, and as such is not only debarred from acquiring title himself as against the trustor, but is under an obligation to pay the taxes, as a means of protecting the trust property as against a hostile title. * * * (Citing authorities.)"

In Hall v. Westcott, 15 R. I. 373, 5 A. 629, it was held: "A mortgagee, either in possession or out of possession, is not entitled to set up, as against the mortgagor or the other mortgagees, a tax title to the mortgaged estate purchased by him at a tax sale."

The court, after citing many authorities in support of its holding, remarked: "Other cases adopt a narrower view, and maintain that any person can become a purchaser who is not under any legal duty to pay the taxes"— citing Williams v. Townsend, 31 N. Y. 411, Waterson v. Devoe, 18 Kan. 223, and two Arkansas cases (Bettison v. Budd, 17 Ark. 546, 65 Am. Dec. 442, and Ferguson v. Etter, 21 Ark. 160, 76 Am. Dec. 361) and we add Jones v. Black, 18 Okl. 344, 88 P. 1052, 90 P. 422, 11 Ann. Cas. 753, as being properly classified therewith. See 19 R. C. L. "Mortgages," § 174, note 4. These three cases are substantially relied upon by appellant in support of a view contra to that set forth in Des Moines Sav. Bank & Trust Co. v. Eisenmenger, quoted supra. All these cases involved controversies between a mortgagor and mortgagee who claimed under a tax deed procured while he was a mortgagee, and are cited in the annotation to Jones v. Black, supra, to the following statement: "It is held by some courts that a mortgagee not in possession of the mortgaged premises is under no obligation to pay the taxes thereon, and may acquire a title as against the mortgagor by the purchase of the mortgaged premises."

The court in Jones v. Black, the annotated case, cited both Waterson v. Devoe and Williams v. Townsend in support of its holding. It is unfortunate for appellant that, in considering these cases, we find that this court in Kershner v. Trinidad M. & M. Co., 27 N. M. 326, 201 P. 1055, 1057, cited Jones v. Black and its annotation, supra, for a collection of the cases and reached a conclusion contrary to that announced in those three cases, saying: "We are met at the threshold with the question as to the effect of the tax sale. At the time of the purchase by appellant at tax sale, he was the mortgagee of appellee of the property involved. It was taxed as improvements on a mining claim under the provisions of section 5427, Code 1915, which provides for the taxation of all property in the state, with certain exceptions, and section 5433, Code 1915, which specifically provides that improvements on mining claims shall not be exempt. A mortgagee is authorized to pay taxes on the mortgaged property, or to redeem from tax sale, and the amount paid becomes an additional lien on the property to be enforced with the mortgage. Section 5504, Code 1915. Under such circumstances, can the mortgagee acquire a tax title to the property and thus defeat the title of the mortgagor? There is some diversity of opinion on the subject, but the great weight of authority is that the mortgagee, when he pays taxes or redeems from tax sales, merely acquires an additional lien on the property and may recover the amount paid from the mortgagor along with the mortgage debt, and cannot in that way acquire a title which will defeat that of the mortgagor."

Section 5504, Code 1915, cited in that decision, is not essentially different from its successor, section 419, chapter 133, Laws 1921, which provides: "In cases where property is mortgaged, if the mortgagor fails or neglects to pay taxes due thereon, the mortgagee may pay such taxes or redeem such property if sold for taxes. On payment of any such

mortgage, or in the action to enforce the same, the mortgagee may demand the taxes so paid, with interest thereon at the rate of twelve per cent per annum, or the same may be included in any judgment rendered on the mortgage, and any taxes so paid by the mortgagee shall be a lien on such property so mortgaged until the same shall be paid."

It will be observed that this statute is permissive in form and does not say that the mortgagee shall pay the taxes in case the mortgagor fails to do so. The basis of appellant's argument and of the decisions he cites is that the mortgagee under such provisions, either in a statute or a mortgage, is under no duty to pay the taxes, and yet we held in Kershner v. Trinidad M. & M. Co., supra, that under section 5504, Code 1915, the mortgagee paying taxes or purchasing at a tax sale was entitled to the remedy provided by the statute and could not acquire a tax title which would defeat the mortgagor. Furthermore, we observe that the court supported its holding, with a citation to Cooley, Taxation (3d Ed.) 970, and examining that text it appears to be drawn from the classic statement of the reasons for holding that one mortgagee may not acquire or assert title under a tax title as against another mortgagee, as laid down by Judge Cooley in the case of Connecticut Mut. Life Insurance Co. v. Bulte, 45 Mich. 113, 7 N. W. 707, 709, from which we indulge a generous quotation:

"But it is possible for parties to have antagonistic claims in lands, which place them neither actually nor constructively in confidential relations. In some such cases no doubt either is at liberty to strengthen his title as against the other by a tax purchase. Blackwood v. Van Vleit, 30 Mich. 118. It is claimed that a second mortgagee occupies this position in respect to the first mortgagee, and if the latter does not protect his lien by payment of the taxes or by attending as purchaser at the tax sales, the former is under no obligation to do so for him. And it is no doubt true that he is under no obligation to protect the first mortgagee; but the real point in controversy is, whether, if the second mortgagee pay the taxes or bid off the land, the payment or purchase will not ipso facto constitute a protection?

"It certainly cannot be said that the second mortgagee owes any duty to the first mortgagee to protect his lien as against tax sale. Neither on the other hand does the first mortgagee owe any such duty to the second mortgagee, or to the owner. To the state each one of the three may be said to owe the duty to pay the taxes; and the state will sell the interest of all if none of the three shall pay. As between themselves, the primary duty is upon the mortgagor; but if he makes default, either of the mortgagees may pay, and one of the two must do so or the land will be sold and his lien extinguished. But in such cases, where each has the same right, payment by one is allowed to increase the amount of his encumbrance; for in no other way could he have security for its repayment by the mortgagor, who ought to protect the security he has given.

"When therefore each mortgagee has the same interest in making payment of the tax,

and the same right to do so, and the same means of compelling repayment, it may well be held that a purchase by one shall not be suffered to cut off the right of the other, because it is based as much upon his own default as upon that of the party whose lien he seeks to extinguish. It is as just and as politic here as it is in the case of tenants in common, to hold that the purchase is only a payment of the tax."

And it is interesting to note that the editors of the fourth edition of Cooley on Taxation cited Kershner v. Trinidad M. & M. Co., supra, to the declaration in the text at section 1440, which corresponds to the text cited by us in that case.

It is true section 419, c. 133, Laws 1921, only declares that "the mortgagee" may pay such taxes, etc., and does not treat of senior and junior mortgagees, but the Supreme Court of Minnesota, in Norton v. Metropolitan Life Ins. Co., 74 Minn. 484, 77 N. W. 298, 539, considering a similar situation, settled the law for that jurisdiction, we think correctly, that it is as much the duty of one mortgagee as of another to pay taxes, and consequently one purchasing at a tax sale cannot acquire a tax title to the exclusion of another mortgagee, but at best has only a right of reimbursement to be protected if need be, by an equitable lien. The court held that successive mortgagees are thereby put in the same category, equitably, in respect to tax payments by them as tenants in common.

As to tenants in common and their status with respect to tax payments by them, we have taken the position in Smith v. Borradaile, 30 N. M. 62, 227 P. 602, and Torrez v. Brady (Dec. 1932) 37 N. M. 105, 19 P.(2d) 183, that, when a cotenant purchases an outstanding title or claim to the common property, such purchase inures to the benefit of the common estate.

In Chrisman v. Hough, 146 Mo. 102, 47 S. W. 941, 943, involving a contest between a first mortgagee and a second mortgagee, the court adverted to the language of Judge Cooley, heretofore quoted, and, after saying that the weight of authority is in favor of holding as did Judge Cooley, said: "As was said by Bingham, J., in Woodbury v. Swan, supra [59 N. H. 22]: 'It is a general rule, founded on the requirements of good faith, that any one interested in land with others, all deriving their titles from a common source, cannot acquire an absolute title to the land by a tax deed, to the injury of others. The payment of taxes by a mortgagee protects his interest, and for the protection of his interest he may acquire a tax title, but he cannot set up that title to defeat a prior mortgage.' A title thus acquired by a second mortgagee 'inures to the protection, not the destruction, of the general title'; and no distinction on principle can be made between the case where such title is procured at first hand by purchaser at the tax sale, and the case where the title is afterwards acquired by the second mortgagee from such purchaser. Frank v. Caruthers, 108 Mo. 569, 18 S. W. 927, and authorities, supra. All that the second mortgagee can in equity and good conscience demand of the prior mortgagee is that he be reimbursed

from the general estate for the sum thus expended in procuring a title which protects the interests of each, and restores that estate to its original standing, so far as their interest therein is concerned."

■ It only remains to be considered whether the facts in the present case render inapplicable the principles heretofore approved by this court. By referring to the statement of facts, it appears that seventy-seven days after the date of the decree and thirteen days before the sale could be had, and while one year and three months and ten days yet remained within which the property could be redeemed from the tax sale, the appellant paid to the county treasurer the amount of the taxes, with penalty and interest then due, and obtained the tax sale certificate which had been issued to Chaves county, with the treasurer's indorsement of assignment thereon. The county's title had not then become absolute. The appellant and appellee, each being a person having "a legal or equitable right" in the property, had a right to redeem it from the tax sale. Section 449, ch. 133, Laws 1921. The relation of the appellant and appellee to the property and to each other had not been extinguished by the decree of foreclosure, and we see no reason why the principles heretofore adhered to do not persist. See Baird v. Fischer, supra, where such principles were applied to a similar state of facts.

■ Safe Deposit & Trust Co. v. Wickhem, 9 S. D. 341, 69 N. W. 14, 62 Am. St. Rep. 873, is cited by both parties. It announces principles supporting the position of appellee. Appellant cites it for the holding doubtless that: "If the title of both (successive mortgagees) is extinguished by the tax sale, their prior relations cease, and the junior mortgagee may then purchase and assert the tax title, etc."

The title which the county of Chaves acquired by the issuance and recordation of the tax sale certificate was: "A complete legal title * * * subject to redemption as provided by law."

In the South Dakota case last cited, the period of redemption had expired before the purchaser at the tax sale, a stranger to the mortgage, received his deed, and he thereafter, without collusion, conveyed his "absolute and fee simple title" to the junior mortgagee. As a precedent it is without value to appellant in the case at bar.

■ Appellant further argues that, even if the appellee is correct, as we find she is, as to the equitable doctrines which control the situation, "she would not be in a position to recover in the action for the reason that she did not make any tender to the appellants, or offer to pay the taxes which had been paid out by the appellant Bank, in the purchase of the property." Appellee replies that this question was not raised below, and that, furthermore, evidence was offered by appellee to show a tender on behalf of appellee before the deed was issued to appellant bank, but appellant procured the exclusion of the testimony on the ground that it would not be admissible under any issue in the case and would be wholly immaterial and would not affect the legal matters involved in the action. The pleadings in the main were in the ordi-

nary form of action to quiet title. We are not certain as to the necessity of a plea of tender at the time the issues were framed. It may not have been necessary for appellee to have anticipated that appellant, to support its cross-complaint of ownership, would rely upon the tax deed in question. In Des Moines Sav. Bank & Trust Co. v. Eisenmenger, supra, it appears that, after the first mortgage had been foreclosed and the premises sold under the foreclosure decree and the sale confirmed, a junior mortgagee, who had purchased the property at a tax sale, was heard successfully to petition for an order vacating the decree to permit him to appear and assert and protect a lien for taxes by reason of such property. The original decree was opened to let in defendant on the ground of excusable inadvertence. The error, induced by erroneous advice of earlier counsel, was the assumption that the defendant, having purchased the delinquent taxes, could perfect in the ordinary statutory method a tax title superior to plaintiff's mortgage. The Supreme Court said that this assumption was incorrect, but affirmed the order vacating the decree and permitting the assertion of the lien aforesaid. In the case at bar, we have an entirely different situation. Appellant chose to put all its eggs in one basket, i. e., a claim of title superior to that of appellee, and repudiated both the theory that it was entitled to reimbursement and the tender of same. While we are in sympathy with expressions of Judge Cooley, in Connecticut Life Ins. Co. v. Bulte, supra, to the effect that appellee ought not to enjoy the benefit of the equitable principles it relies upon, to the effect that the purchase of the tax certificate by appellant was a payment of the taxes for the benefit of the estate and at the same time go free from obligation on account of such a payment, it seems too late, under the circumstances, to impose such obligation upon her.

The trial court awarded the appellee $500 as the rental value of the premises while in possession of appellants, and found that the appellant Bank of Commerce and its grantees had been in control of and used the premises "since about the first of April, 1926." To this finding, the appellants complain on the ground that the finding is not supported by substantial evidence. While the evidence is conflicting, we think it affords substantial support to the finding.

From all of the foregoing, it appears that there is no reversible error presented, and appellee is entitled to an affirmance; yet, in view of the record showing that it has been appellee's desire to do equity by reimbursing appellant to the extent of its outlay in paying the taxes involved, the judgment of the trial court is reversed, with direction that the decree be modified so as to allow appellant an offset to the extent of such outlay against the money damages allowed, and that a new money judgment be entered for the balance, against the judgment debtor and against the sureties on the supersedeas bond. No costs are taxed against the appellee, and it is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and ZINN, JJ., concur.