TERM AT JACKSONVILLE, 1856.                711

Harrison and Wife vs. Roberts.—Opinion of Court.

EPHRAIM L. HARRISON AND WIFE, APPELLANTS, vs. HIRAM
ROBERTS, APPELLEE.

1. The lien of a judgment at law attaches to and binds the real estate of the defendant therein, acquired subsequent to the rendition thereof.
2. There is no rule of law or principle of equity which prevents a first mortgagee from purchasing the mortgaged property when sold at sheriff's sale under a judgment prior to the mortgage; and, in such case, he takes absolute title.
3. When a surplus remains after the satisfaction of a prior execution under which property mortgaged has been sold, equity will regard the fund as substituted for the land, and pursue and distribute the same amongst subsequent mortgagees according to their priorities.
4. The court will not consider the validity of a bargain and sale of real estate between parties who make no objection to the transfer, at the instance of another, whose rights are not affected thereby.

Appeal from Duval Circuit Court.

For the facts of the case, reference is made to the opinion of the court.

*McQ. McIntosh* and *G. W. Call* for Appellants.

*P. Fraser* for Appellee.

PEARSON, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Duval county, sitting in chancery.

On the 22nd of September, 1851, Samuel Spencer, being the owner of lot No. 4, in square No. 2, in the town of Jacksonville, mortgaged the same to Joseph S. Baker, to secure the sum of 1,100 dollars, payable on the 1st day of July, 1852.

Thereafter, on the 22nd of November, 1851, he mortgaged the same property to Hiram Roberts, to secure the payment of the sum of 1,410 dollars and forty-three cents, payable on the first day of January, 1853.

At the time of and previous to the execution of these mortgages Spencer was otherwise indebted, and particularly there was a judgment in force against him, recorded in Duval Circuit Court on the 3rd of June, 1851, in favor of Thomas W. Jones, for the sum of 92 dollars and twenty-one cents, together with interest and costs. On the 27th of November, a few days after the execution of the second of the mortgages aforesaid, Jones sued out an execution upon his judgment, which he caused to be levied upon the house and lot of Spencer, which was the subject of the aforesaid mortgages, under and by virtue of which levy the property was sold by the sheriff of Duval county on the 5th of January, 1852, Joseph S. Baker, the first mortgagee, becoming the purchaser for the sum of 1,750 dollars. Joseph S. Baker, on the 17th January, 1852, sold his interest in the property to Mrs. Julia A. Harrison, who, together with her husband, the said Ephraim L. Harrison, were admitted into possession and have ever since occupied the premises as their own, adding, in the mean time, materially to their value by substantial and permanent improvements thereupon.

On the 17th of January, 1853, Hiram Roberts filed his bill for a foreclosure of his mortgage, and, on the 7th of July thereafter, Harrison and wife filed their cross-bill to adjust the equities between all the parties.

Such is the state of facts, in the opinion of the court, presented by the record, and for the better understanding of the matter, we choose to regard them in this aspect for the present, leaving for further consideration the details of the subject which are relied upon as varying in some degree this view of the case.

It is urged that the judgment of Jones was not a lien upon any other real estate of Spencer than that of which he was seized and possessed at the date of the rendition of

the judgment, and as this property was subsequently ac-quired by him, there was no judgment lien upon it, and consequently the sheriff's sale was void and the mort-gages took preference agreeable to their priorities. This can scarcely be regarded as an open question in this State, having received, if not a direct adjudication upon the point, at the least, such a manifest indication of the opin-ion and views of this court as to remove all prior doubts on the subject. When a statute, as we think this does, (Thompson's Digest, sect. 4.,) expressly and clearly de-clares the design of the Legislature, it is not allowable by an extremely refined and technical construction to do away with its force and impair its efficacy. When it is enacted that judgments "shall create a lien and be bind-ing upon the real estate of the defendant," it is not for this court to say that any portion of that estate shall be exempt from such lien. This would be to create a distinction and make a restriction not contemplated by the legislative au-thority. Such a distinction is in itself unnatural and un-reasonable. Why should property, acquired perhaps by the very means of a loan, be relieved from liability to a judgment rendered for the identical fund with which it was purchased? Such a rule would confound all our ideas of right and justice. This question was very fully con-sidered in the court below, and the authorities cited in the opinion of the Circuit Court, in our opinion, conclude the question of the lien of a judgment upon real estate ac-quired by defendant subsequent to its rendition. The lien of the judgment then prevailing on this property, a sale of the same by execution founded upon the judgment, would carry the title free from the incumbrance of the mortgages. If indeed the mortgages had been executed and recorded in due legal form anterior to the date of the judgment, a sale under it, as provided by our statute, could

only have affected the equity of redemption and left the properly itself subject to the mortgages and their equities.

But, it is further argued, that Baker, being the first mortgagee, was thereby estopped from purchasing, as another might have done, at the sheriff's sale. Is this so? Was he prevented by any law or any rule or principle of equity from making such purchase? Does his purchase connect itself with his mortgage interest, so that the sum paid by him on the sale under execution creates but an addition to his mortgage debt, and so to be held by the same security? Or, does he obtain by such purchase the legal estate in the property absolutely? A mortgagee may not contract with the mortgagor "*at the time of the loan* for an absolute purchase of the lands for a specified sum, in case of default made in payment of the mortgage money at the appointed time, justly considering it would throw open a wide door to oppression and enable the creditor to drive an inequitable and hard bargain with his debtor, who is rarely prepared to discharge his debt at the specified time." Coot on Mortgages, p. 14.

Otherwise, there is no objection to his purchase of the equity of redemption; and, where the transaction was fair, though the full value was not given, the agreement has been enforced. 3 Simons, 42; 11 Clark and Finnelly, 648.

If, then, the mortgagee may purchase the equity of redemption from the mortgagor, we see no reason why he may not purchase it and the entire property, when sold at sheriff's sale, at the instance of a third party. In such case, there is no room for oppression or opportunity for taking advantage of the necessities of the mortgagor. To deny this right to purchase on the part of Baker would be to place it out of his power to secure his mortgage debt in the event another had become the purchaser at sheriff's sale, and thereby secured the title in fee. Indeed, con-

sidering the insolvency of Spencer, the mortgagor, the purchase of Baker and the suspension of the surplus purchase money above the amount of the execution, so far from working or operating as an injury to Roberts, has been the means of securing a considerable portion of his mortgage debt, which otherwise might have been lost; and he may now obtain all the relief which equity would have afforded him had he filed his bill in the first instance for a foreclosure of his mortgage, offering, as he was bound to do, to redeem all prior incumbrances. The mortgagee, Baker, then, having the legal right to purchase, by so doing, ceased to hold the property in pledge under and by virtue of his mortgage and became absolute owner of the same in fee.

It is further argued that Baker did not complete the purchase of the property under the execution, and is not, therefore, entitled to be regarded as such owner. So, therefore, it becomes necessary to examine the facts connected with this sale. The sum paid by Baker to the sheriff in satisfaction of the execution at the time of the sale, was about 140 dollars, while his bid for the property was 1,750 dollars. The premises being indivisible, a sale of a smaller portion of them to satisfy the execution could not be had.

Such is the fair inference from the facts, as there has been no complaint of irregularity in the sale, and none have moved to set it aside or insisted that too much was sold. The sheriff receives on Baker's bid a sum sufficient to pay the execution in favor of Jones and returns the same satisfied, together with the fact of his sale. But there is a balance of some 1,410 dollars, which Baker insists on discharging in part by his mortgage of 1,100 dollars and interest, and the remainder in cash. The sheriff refused to accede to this arrangement, and so the matter

has stood until the filing of these bills and the proceedings had thereupon. It is very obvious that Baker was equitably entitled to the mode of settlement he proposed with the sheriff, and if at that time a court of chancery had been applied to, it would have allowed his claim and compelled the receipt of the mortgage demand. Upon the clearest principles of equity jurisprudence, if another person had become the purchaser at the sheriff's sale and actually paid the purchase money into the hands of the sheriff, the residue, after satisfaction of the execution, would still have been equitably bound by the mortgages, the money being but a substitute for the land. Spencer being insolvent, equity would unquestionably have enforced this claim against him. The rule is that a complainant must do equity as a condition of claiming equity. After adjusting the mortgage of Baker, the remainder of the fund would, upon application of Roberts, have been paid over upon his second mortgage; and this, we think, is the whole extent of the interest which he can rightfully claim, either in the lot or the proceeds of its sale. If he had filed his bill against the prior incumbrancers, Jones with his judgment and Baker with his mortgage, and a sale had been ordered, he could have obtained no more than this. But this has already been effected by the sale under Jones' execution; that execution is satisfied; Baker tenders his prior mortgage for satisfaction, and the remainder of the funds arising from the sale, to Roberts.

It is not pretended that there was any unfairness in the sale, or that the property was sold for less than its full value; nor is it doubted that Jones had a right to sell it under his execution. Why then another sale, with no other purpose, as far as we can discover, than to obtain a better price by reason of the improvements made by Mrs. Harrison since her occupancy under the impression that

she was the owner, and thereby increase the dividend of the second mortgagee. We see neither equity nor good conscience in this, and upon the principle that equity will consider that as done which should have been done, are fully satisfied that neither in law nor in equity should the position of the parties be disturbed.

Objection was made upon the argument to the rights of Mrs. Harrison as against Baker; but we see no difficulty in that respect. Baker concurs with her in her application to the court for the title of the property in question, and it is not for Roberts to interfere by taking exceptions proper only for the parties in interest themselves. When Baker claims the benefit of the statute of frauds to protect him against his sale to Mrs. Harrison, or raises any other objection to the consummation of his bargain with her, it will be time enough to consider that question. Baker himself makes no such objection, and his answer is in full support of Mrs. Harrison's claim. She has been in possession from the date of her purchase, has made considerable repairs and improvements, paid a large portion of the purchase money and is willing and offers to pay the residue, and there is no reason, that we can see, to doubt the integrity and fairness of Baker in the transaction.

We are, then, of opinion that by the purchase under Jones' execution Baker became owner of the lot and is entitled to a conveyance of the same upon the payment which he made of the amount of the execution, the satisfaction of his mortgage since assigned to Mrs. Harrison and the payment of the residue of his bid.

Let the decree of the Circuit Court be reformed in accordance with the principles laid down herein, and the cause remanded for further proceedings consistent therewith.

The appellee Roberts to pay the costs in this court.