### John L. Jones v. C. B. Black.

(Filed February 15, 1907.)

1. **MORGAGEE—Not Required to Pay Taxes.** A person holding a mortgage upon real estate as security for a debt, is under no obligations to pay the taxes upon such property, unless there is some provision in the mortgage requiring him to do so.

2. **MORTGAGEE—Purchaser at Tax Sale.** A person holding a mortgage upon property may acquire title to the mortgaged premises by purchase at tax sale and obtaining tax deed therefor.

3. **NO CAUSE OF ACTION STATED.** In an action brought for an accounting and to cancel a tax deed, which in substance alleges that B, while holding a mortgage upon the real estate of J, purchased the same at tax sale, thereby defeating the title of J, and his right of redemption, and alleging a demand for settlement of their accounts, does not state a cause of action.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before John H. Burford, Trial Judge.*

*Brown & Stewart* and *Devereux & Hildreth,* for plaintiff in error.

*Cotteral & Horner,* for defendant in error.

Opinion of the court by

PANCOAST, J.: This case presents but one legal proposition. The issues arise upon a demurrer to the petition, which was sustained by the court below. The question presented is: Can a mortgagee acquire title to the mortgaged premises by his purchase of a tax certificate and obtaining

the tax deed therefor so as to cut off the rights of the mortgagor in the premises?

The cases have been before the various courts in various forms, and, while a casual reading might indicate that there is some conflict in the authorities upon the proposition, yet, after a careful reading of the different statutes and the different cases as presented, the seeming conflict does not, in fact, exist.

Under the old rule, where the mortgagee held the legal title, he was held not to be able to acquire title through tax sale. The same rule applies to a mortgagee in possession. Under our statute, a mortgagee holds his mortgage as security for the debt only, and where there is no obligation in the contract on the part of the mortgagee to pay the taxes on the property, the authorities are uniform that he may acquire title through tax sale. In this case there was a provision in the mortgage that in case of failure on the part of the mortgagor to pay the taxes, the mortgagee should have the right to pay the same. This provision, however, simply reiterates the right which he would have had without any such provision being contained in the mortgage. The provision does not obligate him to pay the taxes, but it gives him the right to do so upon a failure of the mortgagor to pay. This right the mortgagee would have had without this condition, and it neither broadens nor limits the legal rights of the respective parties. Under the present law and the condition of the parties as they exist in this case, there is no relation of trust or confidence existing between them to preclude the mortgagee from becoming the purchaser at tax sale. The common law attributes of the mortgage have

been wholly and entirely set aside. The mortgagee has a mere lien upon the property, but no title. His lien gives him no right of possession. His only remedy is by foreclosure. He is required to pay taxes upon his note and mortgage, and when he performs this obligation, it is all the law requires of him.

By loaning money to the mortgagor, the mortgagee does not covenant or promise to pay taxes upon the security given, but, on the contrary, the mortgagor is under obligations to pay the taxes, and it is his duty to protect the lien or security. To allow a mortgagor to refuse to pay taxes upon property which he has given to secure an indebtedness and, after the mortgagee has purchased the property at tax sale, to hold him as a trustee for the benefit of the mortgagor, would be to allow the mortgagor to take advantage of his own wrong. The mortgagee cannot be held liable as having any title in the land, as our statute negatives the idea of the title in a mortgagee. The fact that the mortgagee may pay the taxes and recover the same by foreclosure, does not make it obligatory upon him to do so, nor does the purchase at tax sale create any relation of trust and confidence between him and the mortgagor. "The principles in relation to dealings between trustee and *cestui que trust,* as adopted by the courts of equity do not apply. Dependence, and the duty of protection, are not involved in this relation, and they may deal subject only to the ordinary principles."

The authorities supporting this doctrine are: *Waterson v. De Voe,* 18 Kan. 223; *Williams v. Townsend,* 31 N. Y. 415; *Smith v. Louis,* 20 Wis. 369; *Walthall's Exrs. v. Rives,* 34 Ala. 91; *Harrison v. Roberts,* 6 Fla. 711; *Reimer v. Newell*

49 N. W. 865. Many other cases might be cited, but we deem these sufficient. It is plain that the sustaining of the demurrer to the petition by the court below was correct.

There being no error disclosed by the record, the judgment of the district court is affirmed.

Burford, C. J., who presided in the court below, not sitting; Burwell, J. and Garber J. dissenting; all the other Justices concurring.

Dissenting opinion by

BURWELL, J.: The majority opinion in this case is placed upon the ground that a mortgagee has a lawful right, in the absence of an agreement to pay the taxes, to purchase the land covered by his mortgage at tax sale, and acquire a tax title as against the mortgagor. The opinion is based upon authorities from Kansas, Wisconsin, Alabama, New York and Michigan. We will first consider the case of *Reimer et al. v. Newell,* (Mich.) 49 N. W. 865, which is cited in support of the majority opinion. In that case the mortgagee had died and Newell became the administrator of the estate of the mortgagee. The land was sold at tax sale and Newell purchased it in his individual name. In considering the case, Mr. Justice Mitchell said:

"The last point made is that defendant has no right to set up a tax title against the plaintiffs. The facts are that one Abby L. Newell, deceased, of whose estate defendant was administrator, held, at the time of her death, a mortgage on the premises, executed by one Reimer, (to whose interests plaintiffs had succeeded) in which the mortgagor covenanted to pay the taxes on the premises. Neither the mortgagee nor her administrator had ever gone into possession of the mortgaged premises. Defendant purchased at the tax sale in his own name individually, and not as administrator. Conceding, in the language of counsel, 'that there is substantial identity of defendant and mortgagee in this case,' there was nothing to prevent him from acquiring against the mortgagor, or his successors in interest, a tax title on the premises. Whatever may be the rule in other jurisdictions; or whatever may be thought of the policy of permitting a mortgagee in any case to acquire, as against the mortgagor, a tax title on the mortgaged premises, there can be no doubt but that, under our statute, this may be done where, as in this case, the mortgagee is neither legally nor equitably bound to protect the property against the sale or the taxes for which the sale is made. The evidence (upon which plaintiff's counsel lays much stress) tending to show that defendant made his purchase at the tax sale as a payment of the tax, and not for the purpose of acquiring a tax title adverse to either the mortgagor or the mortgagee, was not such as to require a finding to that effect; and the court has expressly found that the purchase was not intended to operate as a payment of the tax, nor was the tax title taken by the defendant for the protection of the mortgagor or the mortgagee."

It will be seen that this decision was controlled by express statutory provision, and was not influenced by the general law on the subject. The case of *Smith v. Lewis,* 20 Wis.

369 is also relied upon.. I cannot interpret this case as supporting the position taken by my brethren.  Lewis was a junior mortgagee and foreclosed his mortgage, purchased subsequently the certificate issued at the tax sale, went into possession of the land and sought to set up the tax title thus acquired by him against the lien of the first mortgagee.  In other words it was claimed that the tax-sale of the land and the obtaining of the tax deed cut off the lien of the first mortgagee.  The syllabus of the case states the rule of law adopted by the court.  it is as follows:

"Where a second mortgagee·of land purchases on foreclosure of his mortgage, he cannot acquire an absolute title, free from the lien of the first mortgagee, through an assignment to him of an outstanding certificate, and a deed issued thereon."

Wisconsin has statutory provisions which in a measure control the payment of taxes by the mortgagor and mortgagee, but that court in express and positive language lays down the rule, for which I here insist, in the case of *Burchard, et al. v. Roberts,* 70 Wis. 111. Mr. Justice Lymon in discussing the case, said:

"The question is whether the mortgagees of the land are in any better position than Doty, the mortgagor, to acquire title thereto by purchasing at the tax sale and taking certificates of sale.  We have been referred to no case decided by this court, and are not aware that there is any such case, in which it is held that a mortgagee may, in this state, cut off the mortgagor's equity of redemption by acquiring title to the mortgaged land under a tax deed.  True, several cases determined by this court are cited by the learned counsel for defendant as holding that a mortgagee may thus

acquire adverse title, but an examination of those cases will show that *none of them so hold.*"

Then the learned justice expressly distinguishes all of the cases decided by that court which were cited in that case in support of the doctrine adopted by this court in the case at bar, expressly commenting upon *Studervant v. Mather,* found in 20th Wis. 606, the syllabus of which is in the following language:

"It seems that a mortgagee (not in possession) may acquire title as against the mortgagor by purchase under a superior lien, whether at a tax-sale or at a sheriff's sale, under a prior judgment, per Dixon, C. J. It was, however, not necessary to decide that question in this case."

Finally, the learned justice, after discussing these prior decisions of the supreme court of Wisconsin, said:

"It is plain that none of the above cases sustain the proposition to which they are cited. On the contrary we are satisfied on principle and authority, and especially in view of the statute which will presently be cited, that in the present case the purchase of the land at tax sale for the mortgagees, and the taking of the tax certificates thereon, must be regarded as for the protection of the estate and the mutual benefit of the mortgagees and mortgagor. As was said by Dixon, C. J., in *Fiske v. Brunette,* 30 Wis. 102, such purchase and the taking of the certificates must be regarded as so much money advanced to the mortgagor on the faith of the security. The above reference is to R. S. secs. 1158-1160. These sections, in effect, add the amount so paid for taxes by the mortgagee to the mortgage debt, and extend the security of the mortgage over it. These statutory provisions give the mortgagee an adequate remedy to reimburse himself for the taxes thus paid by him, and are inconsistent with the idea that he may cut off the mortgagor's equity of re-

demption in the mortgaged premises by acquiring an adverse title thereto under tax proceedings. Moreover, *without regard to statutory provisions,* there is high authority for thus holding on general principles of law. Judge Cooley, in his treatise on the Law of Taxation, says:

"'It cannot be said in such a case that either mortgagee or mortgagor is under no obligation to the government to pay the tax. On the contrary, the tax being one that purposely is made to override the lien of the one as well as the title of the other, it might well, as it seems to us, be held that neither mortgagor nor mortgagee was at liberty to neglect the payment as one step in bettering his conditions at the expense of the other, but that the presumption of law should be that the party purchasing did so for the protection of his own interest merely. And so in general are the authorities.' Page 503, 504 and cases cited in notes. This language of Judge Cooley is quoted approvingly in Mr. Freeman's learned note to *Black v. Howe,* 15 Am. Dec. 684. This doctrine commends itself to our judgment as reasonable and just."

From this positive sentence used by the supreme court of Wisconsin in this later case, it is expressly held that, in the absence of statute, a mortgagee, whether in or out of possession in the absence of a contract to pay taxes, cannot acquire a tax-title as against his mortgagor.

The case of *Walthall's Executors v. Reves,* 24 Ala. 91, was not a tax case. The court in that case simply held that a mortgagee was not estopped from buying the land which was sold to satisfy a judgment which was prior to his mortgage. The case of *Harrison v. Roberts,* 6 Fla. 711, is exactly like the case just referred to. No claim was made by the mortgagee that he had purchased at tax-sale, as shown by

the statement of the law of the case by the court in the following language:

"There is no rule of law or principle of equity which prevents a first mortgagee from purchasing the mortgaged property when sold at sheriff's sale under a judgment, prior to the mortgage; and in such case he takes absolute title."

The case of *Watterson v. De Voe,* 18 Kans. 223, fully supports the majority opinion and the doctrine is again reaffirmed in the case of *McLaughlin v. Acorn,* 58 Kans. 514. The Kansas supreme court in other cases, however, state that a mortgagee in possession cannot by purchase at tax sale cut off the right of redemption by the mortgagor. This point I will consider later.

The case of *Williams v. Townsend,* 31 N. Y. 415, is the only other case relied upon which I have not considered. The mortgage gave the mortgagor the right, upon default of the mortgagor to do so, to pay the taxes. The court said:

"Where a mortgagee has the right, in default of the mortgagor to pay taxes and assessments, and collect them as part of the mortgage debt, he cannot, by bidding in the premises at a tax-sale, and taking a certificate thereof, deprive the mortgagor of the right given him by statute to redeem the sale for taxes."

It is further said in the body of this opinion that, "A mortgage is a mere security for a debt, and there is no such relation of trust or confidence between the maker and holder of a mortgage as prevents the latter from acquiring title to its subject-matter, either under his own or any other valid lien."

But the same court, in the case of *Sidenberg v. Ely, et al* 90 N. Y., 257, says:

"The rule seems to be established by abundant authority that when the owner of mortgaged property refuses or neglects to pay taxes and assessments, or liens of a like nature, which are imposed upon the mortgaged premises, the mortgagee has the right to pay the same in order to protect his security, and the amount so paid may be added to and become a part of the mortgage debt, which may be enforced upon a foreclosure of the mortgage."

If the rule just stated be the law, and money paid by the mortgagee for taxes, or to redeem from tax sale, becomes a part of the mortgage debt, then surely the mortgagee cannot, by reason of such payment or purchase, cut off the right of redemption by the mortgagor. Not satisfied with a mere statement of the law, the court says further:

"Willard in his work on Equity Jurisprudence, at page 446, lays down the rule that taxes paid may be added to the mortgage debt, and adds: 'So money paid by the mortgagee to redeem the premises from a tax sale, becomes part of the mortgage debt in equity.' He further says at page 448: 'With regard to the amount to be paid on redeeming, it may be said that, as taxes are a legal charge upon the estate, they may, if necessarily paid by the mortgagee, be added to the mortgage debt.'

"The same rule is upheld in Thomas on Mortgages, at sections 77 and 1134."

In Jones On Mortgages, vol. 1, sec. 77, it is said:

"The mortgage usually provides by way of covenant or condition that the mortgagor shall pay all taxes and assessments levied upon the premises. The payment of the taxes thus becomes as obligatory upon the debtor as the payment

of the mortgage debt; and, upon his failure to pay them, the mortgagee may pay them, and have the amount included in any judgment that he may afterward obtain upon the mortgage. Sometimes the mortgage provides that such taxes, when paid by the mortgagee, shall become a part of the mortgage debt; but without such provision, the amount so paid in fact becomes a lien under the mortgage."

Section 1134 also bears out this doctrine.

I might cite many authorities to the effect that a mortgagee may pay taxes or buy in an outstanding tax title and recover the amount so paid under his mortgage lien. However, this is conceded in the majority opinion, but the reason for this right is not discussed. It is even said in the majority opinion that the taxes might be so paid by the mortgagee in the absence of a provision to that effect in the mortgage. May it not be well to look for the reason for this rule? The mortgagee, under the rules of the common law, took the legal title, and the mortgagor simply had the right of redemption. While not always, yet frequently the mortgagee went into possession and collected the rents and profits. While in such possession, if he paid taxes or purchased a tax deed from another, the law presumed that such expenditure was for the benefit of the estate, and he could reimburse himself from the rents and profits, or, if they were not sufficient from the proceeds of sale, but he could not acquire a tax-title as against the mortgagor. I know of no authority to the contrary. The reason for this rule was that the mortgagee, being in possession, enjoying the rents and profits, and being the owner of the legal title, he owed to the government the duty of paying such taxes as might be assessed

against it. Under such circumstances, the mortgagor only had an equitable interest in the land which gave him the right to redeem, but notwithstanding the legal title, and even the possession, were in another, the mortgagor could not acquire a tax-title which would divest the mortgagee or trustee of his legal title. His equitable interest in the land made it also his duty to see to it that the taxes were paid.

In most of the states, by statutory enactment, a mortgage no longer conveys the legal title, but creates a lien upon the land to secure the payment of money; and in the absence of statute the mortgagee is not compelled to pay the taxes. That is, no legal duty exists whereby he is made personally liable therefor. At common law a mortgagee held the legal title to secure the debt; under the statute, the mortgage gives him a lien instead of the legal title. Under the theory that the mortgagee is interested in the land he has been given the right to pay the taxes or redeem them from sale, and retain or recover the amount, as for money advanced under the mortgage. Jones on Mortgages, sec. 77, and 1134 and cases there cited. Black on Tax Titles (Second Ed.) sec. 366. *Stancliff v. Norton,* 11 Kans. 218.

This right has always been the same, no matter whether the mortgagee had the legal title and was in possession, or only had a lien under his mortgage and out of possession. In any event he is interested in the land through his mortgage and in preventing any intervening right that would cut off his lien. Black on Tax Titles (2nd. Ed.) section 266 says:

"Where the owner of mortgaged premises neglects or refuses to pay the taxes assessed thereon, the owner of the

mortgage may, although there be no tax clause in his mort-
gage, pay the same to protect his security; and if he omits
to do this, and the property is sold for the taxes, the mort-
gagee undoubtedly has such an interest in the land as will
entitle him to redeem it from the sale; and the amount which
he pays for redemption he is entitled to have added to the
mortgage debt and allowed to himself as part thereof on
foreclosure. And if the purchaser refuses to accept the
sum necessary to redeem, when tendered in the name of the
former owner by the mortgagee, the latter may seize and sell
the property to satisfy his debt. 'There can be no doubt,'
says the court in Ohio, 'that a mortgagee, even before con-
dition broken, might protect his ᴵlien ᵇby redeeming the
mortgaged premises after a sale for taxes, or that a mere
reversionary interest or title may be protected. It is enough,
we think, that the applicant shows in himself a *bona fide*
title of any kind, which might be lost or prejudiced by a
failure to redeem the premises.' "

See also *Griffiths v. Utley, et al.* (Iowa) 41 N. W. 21;
*Hawes v. Howley*, 130 Mass. 267; *Leitzbach v. Jackson*,
28 Kans. 524; *Plumb v. Robinson*, 13 Ohio St. 279; *Ells-
worth v. Low et al.* (Iowa) 17 N. W. 450; *Gormley v. Bun-
yan*, 138 U. S. 633; *Allison v. Carson, et al.* 83 Fed. 752.

Were it not for the interest of the mortgagee in the
land, he could not pay the taxes without express authority
from the mortgagor, and then recover the amount back from
the mortgagor under the mortgage lien, for if the mortgagee
has no interest in the land and is not in equity bound to pay
the taxes, then such payment by him would be the act of an
interloper or stranger to the transaction and would operate
to discharge the obligation. The payment of taxes for an-
other by one who is under no obligation to pay, and for one

who has not requested such payment must be measured by the same rules as the voluntary payment of any other obligation for a stranger. The authorities are uniform in the doctrine that such payment creates no legal obligation on the part of the debtor to repay the one so discharging his debt. Mr. Black, in his work on Taxation, section 161, lays this rule down, supporting his position by a quotation from Cooley on Taxation. I give the language used:

"There are other persons besides the owner who are entitled to make payment of the taxes assessed upon land, with the effect to render any subsequent sale thereof illegal. It is plain that those who may have been assessed for the tax, those who have or claim interest in the property, and those whose liens or incumbrances upon it would be defeated or postponed by a tax sale may exercise this privilege. It is also the opinion of the United States supreme court that payment of a tax—where a statute requires the same to be made by the owner—need not necessarily be made by the owner in person; it is enough that it be made by him through some friend or agent, compensated or uncompensated, any person, in short, willing to act in his behalf, and whose act is not disowned by him. This much may be accepted with safety. But as to the effect of payment by a mere stranger there is more doubt. Cooley observes with great justice, that 'as the state is only interested in obtaining the revenue it has called for, it would seem that before any sale, and consequently before any rights of third parties have intervened, any mere volunteer may pay the tax if he chooses; and the payment would be effectual, so far, at least, as to terminate the lien of the tax upon the land; through, if the statute undertook to give the person making the payment rights in the land by reason thereof, the payment might not be effectual to confer such rights; for no one can assume the land in the place of the owner for the purpose of performing

an act which the owner himself sees fit not to perform, and claim thereby to establish rights against the owner or his property by what, under such circumstances, would be an officious intermeddling.' "

And again it is said by Mr. Cooley (page 367) that:

"A stranger to the title cannot defeat a tax purchaser by redemption. The purchaser has acquired a title which is subject only to the right of those interested to redeem; and no payment of the amount by a stranger and no acceptance of it by an official from a stranger, can effect this right."

It is also announced in the Am. & Eng. Enc. of Law, vol. 27, page 750, that "a mere volunteer who pays taxes without any interest in or claim against the property, is not entitled to reimbursement from the person liable for taxes, nor will he be subrogated to the benefit of the tax lien." To the same effect is *Montgomery, et al. v. City Council of Charleston* 99 Fed. 825; *Mercantile Trust Co. v. Hart,* 76 Fed. 673; *Union Cent. Life Ins. Co. v. Chopin,* (Iowa) 75 N. W. 791; *Iowa Railroad Land Co. v. Davis* (Iowa) 71 N. W. 229; *Bibbius v. Clark,* (Iowa) 57 N. W. 884; *Garrigan v. Knight,* 47 Iowa, 525; and Mr. Justice Davis, in the case of *Homestead Company v. Valley Railroad,* 17 Wall 153, speaking for the supreme court of the United States, said:

"A party by paying taxes which another party ought to pay but does not pay, cannot make such second party his debtor by having stepped in and paid the taxes for him without being requested so to do."

And again in the same opinion:

"It is an elementary proposition, which does not require support from adjudged cases, that one person cannot make

another his debtor by paying the debt of the latter, without his request or assent."

Cooley on Taxation, page 967 (third edition), lays down in the following language a general rule by which it may be determined as to whether or not a party can acquire a tax title to a particular piece of real estate:

"There is a general principle applicable to such cases, which may be stated thus; that a purchase made by one whose duty it was to pay the taxes shall operate as payment only; he shall acquire no rights as against a third party, by a neglect of the duty which he owed to such party. This principle is universal, and is so entirely reasonable and just as scarcely to need the support of authorities. Show the existence of the duty, and the disqualification is made out in every instance."

And on page 970 of the same work, speaking of mortgagors and mortgagees, the learned author used the language quoted by the supreme court of Wisconsin in the case of *Burchard and Others v. Roberts,* 70 Wis., 111 and to which I again direct attention.

"It cannot be·said in such a case that either the mortgagor or the mortgagee is under no obligation to the government to pay the tax. On the contrary, the tax being one that purposely is made to override the lien of the one as well as the title of the other, it might well, as it seems to us, be held that neither mortgagor nor mortgagee was at liberty to neglect the payment, as one step in bettering his condition at the expense of the other, but that the presumption of law should be that the party purchasing did so for the protection of his own interest merely. And so in general are the authorities."

I do not care to pursue further the discussion of the rights of one who pays taxes for another, without any duty to do so, and without a request for such payment by the person owing the same, as it must be apparent that such payment discharges the obligation, and the amount so paid cannot be recovered back. Now, it is stated in the majority opinion that a mortgagee, not in possession, owes no duty to pay the taxes. Mr. Cooley, who, to my mind, is the highest authority upon the subject, has stated that such duty exists. If the duty of paying the taxes to protect the lien of the mortgagee, in default of such payment by the mortgagor, is upon the mortgagee, or if, by reason of his mortgage, he has an interest in the land, then payment of taxes or redemption from sale therefor must be presumed to be for the benefit of the entire estate, and I am unable to understand upon what theory my brethren can assert on the one hand that the mortgagee out of possession owes no duty to pay the taxes and, on the other, declare that if he pays them, even in the absense of a provision in the mortgage to the effect that he may do so, he can recover the amount so paid back from the mortgagor under his mortgage. I am forced to the conclusion that the two positions are inconsistent and violative of fundamental principles of law.

The state of Washington has a statute which permits the mortgagee to pay the taxes and recover the same back under his mortgage. This statute, however, is only permissive in its terms and in no way changes the general rule. Such a statute would have no greater force than the stipulation in the mortgage in this case. In *Shepard v. Vincent*

*et al.* (Wash.) 80 Pac. 777, Mr. Justice Crow, speaking for the supreme court of Washington, said:

"Under the great weight of modern authority, we believe the great weight of equitable doctrine to be that, whether in or out of possession, a mortgagee holding an unsatisfied mortgage lien cannot be permitted to purchase an outstanding title, and hold the same for the purpose of destroying the title of his mortgagor. By so doing he would hold back the legal title to the property which was originally conveyed to him as security, and also continue to hold against his mortgagor the unpaid note or indebtedness originally secured by said mortgage. His action in purchasing such outstanding tax title must, in equity, be considered a payment, discharge or redemption by him of the tax lien or title, and he will then be entitled to recover under his mortgage the full amount disbursed therefor, together with interest."

The Washington court, in the case just referred to, quotes with approval from Jones on Mortgages, as follows: (Sixth ed., sec. 1134)

"Under the provisions of the mortgage, the taxes, when paid by him, (the mortgagee), usually become a lien under the mortgage. But even when this is not the case, the payment being made to preserve the security he is entitled to recover the amount paid, and may even have a preference to this extent over prior encumbrances whose liens the payment has served to protect. * * * *. * Inasmuch as the mortgagee has the right to pay the taxes in order to protect his mortgage, his purchase at the tax sale must be regarded as such payment, and not as giving him title."

I shall not consume further space by commenting upon other cases supporting my contentions, as an investigation of the subject will disclose that the greater number of the

adjudicated cases and text-writers are against the rule adopted by the majority opinion, and to my mind, there being given no satisfactory reason therein for a departure from the general rule, I am constrained to insist upon my dissent and to protest against the judgment rendered.

I am also authorized to state that Mr. Justice Garber concurs in these views.