[No. 2386.    Oct. 11, 1921.]

KERSHNER v. TRINIDAD MILL. & MIN. CO. et al.

SYLLABUS BY THE COURT.

1.    A mortgagee of a mill site and mill, upon the payment of taxes upon, or redemption from tax sale of, the mortgaged property, acquires nothing more than an additional lien on the property for the amount paid, with interest, enforceable along with the mortgage debt, and does not acquire a title to the property which he can assert against that of the mortgagor.                                             P. 330.

2.    A location of a mill site over the ground covered by a subsisting location is void, and cannot ripen into a valid location, even if the senior location becomes forfeited or abandoned                                          P. 331

3.    The right to a mill site may be transferred by delivery of possession and retention thereof by the transferee.
                                                        P. 334.

4.    The erection and maintenance of a quartz mill upon the nonmineral public lands of the United States is a location of the land upon which the mill stands and that surrounding the same for a sufficient space as is necessary for the con-

venient use and occupation of the mill. In such case the owner of the mill has connected himself with the government, under the terms of Rev. St. U. S. § 2337 (U. S. Comp. St. § 4645), and may resist encroachment of others claiming under the mining laws of the United States.    P. 335.

Appeal from District Court, Taos County; Lieb, Judge.

Suit by William D. Kershner against the Trinidad Milling & Mining Company and others. Decree for defendants, and plaintiff appeals. Affirmed.

F. T. Cheetham, of Taos, for appellant.

Bickley, Kiker & Voorhees and H. M. Rodrick, all of Raton, for appellees.

## OPINION OF THE COURT.

PARKER, J. This is an appeal by the plaintiff below from a decree rendered by the district court for Taos county quieting the title to a certain mill site in favor of the appellee, one of the defendants below, the Trinidad Milling & Mining Company. The action was instituted by appellant by a complaint in the usual form to quiet title to real estate. The appellee company answered, denying the allegations of the complaint and setting up title to the premises adverse to the appellant.. It appears that in March, 1909, a so-called location of the Black Jack mill site was made by appellee's predecessors in title, and a location notice was filed for record in the office of the county recorder of Taos county on April 8, 1909. The location notice describes by metes and bounds a piece of land 500 feet in length by 435.6 feet in width, and recites that there is situated upon the ground a quartz mill and reduction works owned by the locators. It is to be observed that this is a location of a mill site not connected with any lode mining claim, and that the location is based upon the fact of the existence on the land of a quartz mill and reduction works. No question is made as to the non-mineral character of the land, or of the actual ex-

istence on the ground of the mill and reduction works.

Thereafter the said locators of said mill site on April 12, 1912, executed and delivered in escrow, until a balance of the purchase price should be paid, an instrument conveying to one C. F. Wilson the mill and reduction works heretofore mentioned, and used the following language therein, viz.:

"Have bargained, sold, transferred and delivered and by these presents do bargain, sell, transfer, convey, and deliver to the said C. F. Wilson the following described property, to wit, that certain concentrating mill, known as the 'June Bug mill,' together with all machinery, tools and water rights thereunto belonging, such mill being located in Red River Canyon, about 1½ miles below the town of Red River in the Red River mining distirct, in the county of Taos, state of New Mexico."

It is to be observed that the document above referred to is nothing more nor less than a conveyance of the quartz mill and reduction works, and has no reference whatever in terms to any rights in the land covered by the location of the mill site. Thereafter said Wilson assigned his rights under the said conveyance to the appellee, the Trinidad Milling & Mining Company, which company afterwards fulfilled the terms of the escrow agreement by paying the balance of the purchase price due for the property, and thereupon became the owner of the quartz mill and reduction works.

After the appellee took possession in 1912 of the milling machinery and mill site, it re-established the corners of the said mill site and re-ran the lines of the claim, blazing trees on the corners and writing notices thereon to the effect that the Red River Mining & Milling Company claimed the site. The mill was upon the site at the time, and the process of reduction was changed from that of concentration to the cyanide system, and new machinery was installed and buildings erected. In 1914 the company installed a concentrating table, made some test runs,

and treated a.small amount of ore.    There    is no question but that up to this time the appellee company was in the exclusive possession of the property. In 1915·the company made some slight repairs to a flume, cut some brush on the mill site, and cut out some mud at the headgate.    Reed, a representative of the company, was at that time working a claim of his own near the mill site, but aside from such supervision as he gave the mill site, nothing was done by way of operating the mill that year.    No caretaker or watchman was on the premises.

The discrepancy in name between that of the appellee    and    that    of    the    Red    River    Mining & Milling Company, as appeared in the notices posted as above referred to, is explained by the fact that at the time of the posting of said notices the appellee corporation had not been organized, and the name of the same had to be changed from Red River Mining & Milling Company to some other name on account of the requirements of the state corporation commission, and the name of the Trinidad Milling & Mining Company was finally adopted.    But everything which was done in and about the premises was done for the use and benefit of the corporation which was finally organized under the    name    of    the    Trinidad    Milling    &    Mining Company.

In June, 1914, the appellee, the Trinidad Milling & Mining Company, executed to appellant, and two others, a mortgage to secure the payment of $1,583.39, covering the property in question and describing the same as follows:

"The 'June Bug mill site' together with all flumes, ditches, easements, rights of ways, and privileges used with an in connection with said mill and mill site, together with all water and water rights used with and in connection with said 'June Bug mill,' or used in connection with said mill and mill site being located in Red River Canyon," etc.

—which said mortgage was accepted and acted .upon by the appellant.

On July 27, 1915, the treasurer and collector of Taos county sold at tax sale to the appellant the property involved for delinquent taxes of 1914 and described the property as "cyanide mill and crusher." No attempt was made to sell in said tax sale any right or interest in and to the land involved, and the certificate of sale omits the provision in regard to the right of the former owner to redeem from said sale. It was evidently the opinion of the parties concerned that the mill and machinery constituted personal property and that there was no right of redemption from the sale. On the same date the said treasurer and collector sold to the appellant the same property, describing it as personal property and as the "June Bug mill," for the taxes delinquent for the year 1913.

Under these circumstances, the appellant on September 1, 1915, made an attempted location of the ground embraced within this mill site, with slightly different boundaries, and filed a location notice of the same for record on September 4th following.

[1] We are met at the threshold with the question as to the effect of the tax sale. At the time of the purchase by appellant at tax sale, he was the mortgagee of appellee of the property involved. It was taxed as improvements on a mining claim under the provisions of section 5427, Code 1915, which provides for the taxation of all property in the state, with certain exceptions, and section 5433, Code 1915, which specifically provides that improvements on mining claims shall not be exempt. A mortgagee is authorized to pay taxes on the mortgaged property, or to redeem from tax sale, and the amount paid becomes an additional lien on the property to be enforced with the mortgage. Section 5504, Code 1915. Under such circumstances, can the mortgagee acquire a tax title to the property and thus defeat the title of the mortgagor? There is some diversity of opinion on the subject, but the

great weight of authority is that the mortgagee, when he pays taxes or redeems from tax sales, merely acquires an additional lien on the property and may recover the amount paid from the mortgagor along with the mortgage debt, and cannot in that way acquire a title which will defeat that of the mortgagor. See 19 R. C. L. Mortgages, § 174. See, also, Jones v. Black, 18 Okl. 344, 88 Pac. 1052, 90 Pac. 422, 11 Ann. Cas. 753, and note, where many cases are collected. See, also, Cooley, Taxation (3d Ed.) p. 970; Burchard v. Roberts, 70 Wis. 111, 35 N. W. 286, 5 Am. St. Rep. 148; Shepard v. Vincent, 38 Wash. 493, 80 Pac. 777; Jones, Mortgages (7th Ed.) § 1134. The appellant, therefore, when he purchased at the tax sale, acquired nothing more than an additional lien on the property for the amount paid, and interest, and acquired no title to the property, which he could assert against his mortgagor. When he went upon the property and made his so-called location, he was in no better position than that of the ordinary locator.

[2] We have then a case where a party has upon the unappropriated, nonmineral land of the United States a reduction works or mill for the reduction of ore, not associated or connected with any mining claim, and another, deeming himself so entitled, enters upon the premises, takes possession of the same, and the machinery and improvements thereon, and attempts to appropriate the same to his own use by means of a so-called location of a mill site.

The statute governing the matter of mill sites is section 2337, R. S. U. S. (U. S. Comp. St. § 4645), which is as follows:

"Where nonmineral land not contiguous to the vein or lode is used or occupied by the proprietor of such vein or lode for mining or milling purposes, such nonadjacent surface ground may be embraced and included in an application for a patent for such vein or lode, and the same may be patented therewith, subject to the same preliminary requirements as to survey and notice as are applicable to veins or lodes; but

no location hereafter made of such nonadjacent land shall exceed five acres, and payment for the same must be made at the same rate as fixed by this chapter for the superficies of the lode. The owner of a quartz mill or reduction works, not owning a mine in connection therewith, may also receive a patent for his mill site, as provided in this section."

It is to be observed that this section uses the word "location" in connection with mill sites. No method of location is pointed out, as in the case of location of lode claims; but it is fair to assume that the same formalities so far as applicable should be observed as in the case of lode claim locations. Those formalities are prescribed by section 2324, R. S. U. S. (U. S. Comp. St. § 4620), as follows:

"The location must be distinctly marked on the ground, so that its boundaries can be readily traced."

No other requirements of the section are applicable to mill sites.

No requirement of record of any location notice is to be found in this section, but it is provided that when record is made the same shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim. This section has been many times considered by the courts, and it has been often held not to require the posting of any location notice in order to effect a valid location. See 5 Fed. Stat. Ann. 19 et seq., where many cases are collected. Additional requirements are to be found in statutes of several of the states. See 2 Lindley on Mines (3d Ed.) § 521. But in this jurisdiction we have no statute on the subject of the location of mill sites. Here, all that is required to effect a valid mill site location is that it "be distinctly marked on the ground so that its boundaries can be readily traced." The posting of the location notice, containing the name of the locator, or claimant, and giving the location of the

Kershner v. Trinidad M. & M. Co., 27 N. M. 326

mill site with reference to natural objects or permanent monuments, are not required. It seems strange that such an important matter should have been so long left in such an unsatisfactory condition, but such is the fact.

It appears therefore that the locators of the Black Jack mill site made an appropriation of the ground by marking its boundaries, and such was the condition when they contracted for the sale of the machinery to Wilson, assignor of the appellee, Trinidad Milling & Mining Company. Thereafter on April 30, 1912, articles of incorporation were executed, and on May 17, 1912, the same were filed with the corporation commission, incorporating the appellee. In the meantime, the date not being fixed, but being stated to be about the last of April, 1912, the persons interested in the organization of the appellee corporation re-established the corners and lines of the mill site, marking the corners as being claimed by the Red River Mining & Milling Company. The corners, as established, were not identical with the old corners, but were practically so; the only change being at the northeast corner, which was moved about 20 feet.

The court found that appellee corporation was entitled to the Red River Mining & Milling Company location and treated the same as a valid location of the ground.

Counsel for appellant invokes the doctrine promulgated by the leading case of Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, to the effect that a location covering ground already located is void ab initio and can never ripen into a valid location, notwithstanding the senior location is afterwards forfeited or abandoned. He argues that at the time of the location of the Red River Mining & Milling Company mill site, the ground was covered by a valid and subsisting mill site location under the name of the Black Jack mill site, owned by appellee's

.grantors, and which they had not conveyed to appellee, the conveyance being in escrow, and not delivered until long after the location.

The doctrine is perhaps controlling on this point. While it was true there was a conveyance of the mill and machinery delivered in escrow at the time of the location, it was not finally delivered until long afterward and could not take effect until it was so delivered. A location, under the doctrine, must be valid when made; otherwise it fails absolutely. The court was technically in error, therefore, in holding that the Red River Mining & Milling Company mill site location was valid.

[3] It appears, however, that possession of the Black Jack mill site located by appellee's grantors was delivered by them to appellee and retained by it. All of the circumstances show that appellee's grantors intended to surrender their possession to it and appellee took and maintained the same. Was not this a sufficient transfer of the locator's rights in the Black Jack mill site?

In this connection we are not unmindful of the prevailing doctrine throughout the mining states that a mining location operates as a grant by the government of an interest in land, and, consequently, no transfer thereof can be effectuated except by deed. This is perhaps correct on principle in regard to lode or other claims, where, under the federal and local laws, no possession, use, or occupation of the grant is required in order to maintain the locator's rights. Even in case of lode claims in early days it was quite generally held that a mining claim might be transferred by delivery of possession and a retention thereof by the transferee. Union Con. Silver Min. Co. v. Taylor, 100 U. S. 37, 25 L. Ed. 541; Table Mt. Tunnel Co. v. Stranahan, 20 Cal. 198; Doe v. Waterloo Min. Co., 70 F. 459, 17 C. C. A. 190; Omar v. Soper, 11 Colo. 389, 18 Pac. 448, 7 Am. St. Rep. 246; Lockhart v. Rollins, 2 Idaho, 540,

21 Pac. 414; Kinney v. Con. Virginia M. Co., 4 Sawy. 383, Fed. Cas. No. 7,827. Later, California departed from this doctrine by reason of a statute of that state which required a deed to convey mines. Garthe v. Hart, 73 Cal. 541, 15 Pac. 93. Montana by reason of a statute never adopted the doctrine. Hopkins v. Noyes, 4 Mont. 550, 2 Pac. 280. Mr. Lindley criticizes the doctrine that a mining claim may be transferred by delivery of possession, but no distinctions are pointed out between mining claims and mill sites. See 2 Lindley on Mines (3d Ed.) § 642. In this connection we may well recur to section 2337, R. S. U. S. It will be seen that in asserting a claim to a mill site in connection with a lode claim, it must be used and occupied for mining or milling purposes. And in the case of an owner of a mill not connected with a mine, the presence on the ground of the mill satisfies the requirement of the statute as to use and occupation. The statute does not seem to contemplate the right to locate a mill site without actually using and occupying the ground. This is the position of the land department of the government. See 2 Lindley on Mines (3d Ed.) § 521. This is not so with regard to mining locations. After a mining location has been perfected, no further possession need be maintained, except to make the required annual expenditure. The nature of the right is inherently different in the two cases. We are not aware that this distinction has been pointed out in other cases, but we conclude that the right to a mill site may be transferred by delivery and acceptance of possession and no deed is required.

[4] There is another consideration which prevents appellant from recovery in this case. Assuming for the time being that the original Black Jack location became abandoned by the locators and never passed by delivery to appellee, and assuming that the Red River Mining & Milling Company's location is void by reason of being premature, the fact still

remains that at the time of the intrusion of the appellant upon the premises, appellee was in the lawful possession of a portion of the public domain with a mill and reduction works thereon, which it was maintaining and using for the purposes contemplated by the federal statute. That statute is a grant of a right to take possession of the non-mineral lands of the United States for such purposes and to maintain same against all intruders. It follows when appellant intruded and took possession of appellee's mill and made his pretended location, he was a naked trespasser upon the possession of the appellee of the mill and the land upon which the mill stood, and the land surrounding the said mill for such sufficient space as was necessary for the convenient use and occupation of the mill, whether appellee had any location of the mill site at all or not. The only object of the location in such a case is to give notice to others of the claim to five acres and thus prevent encroachment upon the lateral boundaries of the land needed for the operation of the plant. The mill, itself, is notice of the claim to the land upon which it stands and that immediately surrounding it. Its erection and maintenance operates as a location of the land. The owner of such a mill so situated has connected himself with the government and is in a position to resist any subsequent appropriator claiming under the mining law.

As before pointed out, the appellant claims under his location. He does not and cannot claim under his tax title. If his case was founded upon his alleged ownership of the mill under the tax sale, a different question might be presented. In that case the question would arise as to whether the appellee had not lost its right to the possession of the land by reason of its loss of the title to the mill; but no such question is here.

Some other questions are in the case, but in view of our position upon the fundamental rights of the parties, they are of no interest to the appellant.

There being no substantial error in the record of which appellant can complain, and for the reasons stated, the judgment of the court below should be affirmed, and it is so ordered.

ROBERTS, C. J., and RAYNOLDS, J., concur.