PEDRO ORCASITAS MUÑOZ, Appellant, v. REGISTRAR OF PROPERTY OF SAN JUAN (SECOND SECTION), Respondent.

No. 960. Submitted November 4, 1935.—Decided November 25, 1935.

*González Fagundo & González, Jr.,* for appellant. The registrar appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Pedro Orcasitas presented for record in the Registry of Property of San Juan, Second Section, on July 10, 1935, a "Certificate of Sale of Real Property," issued by the Collector of Internal Revenue of Río Piedras, on July 29, 1933, evidencing his acquisition at a tax sale for the sum of $639.92, of a property of 95 acres (*cuerdas*) belonging to Alfonso González and valued at $28,540.

Thereupon the registrar entered the following decision:

"Record of the sale made by this document is denied, and a cautionary notice for 120 days is entered, and an extension of the mortgage in favor of Pedro Orcasitas, for $639.92, is recorded in accordance with the provisions of the last paragraph of the Political Code and the decision in the case of *Cancel* v. *The Registrar of Property,* 15 P.R.R. 473. . . .

"The record to which the preceding note refers was made subject to the curable defect that the contract has not been accepted by the purchaser."

Feeling aggrieved by that decision, Pedro Orcasitas took the present administrative appeal. He maintains, 1st, that the sale is recordable, and that the registrar erroneously applied the law and the decisions cited by him; 2d, that the record of an extension of the mortgage was not proper; and 3d, that the curable defect assigned is nonexistent. He reasoned his conclusions and exhibited the mortgage deed exe-

cuted by the owner of the property in question in favor of Orcasitas to secure the loan of $15,000 received from the latter.

■ The facts are clear. The property in question appears recorded in the registry in the name of Alfonso González, who mortgaged it on December 16, 1931, as security for the loan that Pedro Orcasitas made to him. Nowhere in the document is it stated that the creditor bound himself to pay the taxes already levied or that might thereafter be levied on the property.

The owner of the property, González, failed to pay the taxes and the People of Puerto Rico instituted an administrative proceeding to recover them, and the property was sold at public auction on May 19, 1933. Pedro Orcasitas, who was the only bidder, purchased it on an offer of $639.92, which was the amount owed for taxes.

Orcasitas maintains that he is as much a purchaser as any one else that might have bought the property at the auction and the registrar insists that, since Orcasitas was the owner of a mortgage on the property in question, he was precluded from acquiring it for himself, and that the so-called contract of sale should be construed simply as one of extension of the mortgage.

Let us examine both contentions in the light of the law and the decisions in order to determine which one should prevail.

Section 348 of the Political Code, on which the registrar relies, provides indeed, in its pertinent part, that—

"When the property is redeemed by a mortgagee, the redemption money paid by him shall be added to his or her mortgage lien and may be recovered with the same rate of interest borne by the mortgage lien, and when the tenant or lessee redeems such property he may deduct the amount of such redemption money from his rent."

This court in the case of *Cancel* v. *The Registrar of Property,* 15 P.R.R. 473, held as follows:

"When a property subject to a mortgage lien is sold to a third person for the payment of delinquent taxes and redeemed by the mortgagee himself as such mortgagee, by the payment to the purchaser of the amount of the price of the property sold at auction, interest thereon and the amount of the paid receipts of delinquent taxes, he is not entitled to have the ownership of the property redeemed by him, in his capacity of mortgagee, recorded in his favor, but to have the amount of the price of redemption entered in the registry as an augmentation of his mortgage lien, in accordance with section 12 of the Law of Revenues of March 14, 1907."

Here Orcasitas, a mortgagee, says that he did not bid at the sale as such mortgagee, nor did he redeem the property sold, but that he purchased it at the auction sale for delinquent taxes. Could he do this?

There is no doubt that he could have paid the taxes and under the provisions of section 333 of the Political Code he could have added what he paid to the mortgage and recover it at the same rate of interest borne by the mortgage lien. Nor is there any doubt that he could have redeemed the property in this case in accordance with section 348 of the Political Code cited.

Now, does the fact that the law grants him those rights preclude him from acting independently as any other person and from purchasing for himself the property sold at public auction for nonpayment of taxes?

The answer to that question depends upon the scope of the mortgage, or upon the existence of an agreement between the debtor and the creditor in regard to the taxes.

If the mortgagee by virtue of the contract becomes some sort of a co-owner, or if he undertakes to pay the taxes or enters into some agreement which, in accordance with the law and the decisions, binds himself to that effect, then his rights are confined to those granted to him by the Political Code; but if the mortgage amounts to a mere security and the person in whose favor it is executed does not undertake to pay the taxes nor covenants in regard to them in such a

manner that might alter his position, then the mortgagee is besides entitled, as in the case of any other individual, to purchase for himself the mortgaged property at any sale for delinquent taxes.

Cooley in his treatise, "The Law of Taxation," vol. 3, page 2857 and succeeding pages, says:

"A mortgagor whose duty it is to pay taxes cannot purchase at a tax-sale and thereby discharge the mortgage. But if the mortgagee were in possession, receiving the issues and profits, and bound to pay the taxes himself, it might not be so clear that the mortgagor should be precluded from taking advantage of the mortgagee's neglect. If it were to be so held, there would seem to be reason for holding that the mortgagee also, by reason of his relation to the title, was precluded from becoming purchaser of the mortgagor's interest at a tax-sale, and that his remedy would be confined to a payment for the protection of his lien, with a remedy over for the amount paid. It cannot be said in such a case that either mortgagor or mortgagee is under no obligation to the government to pay the tax. On the contrary, the tax being one that purposely is made to override the lien of the one as well as the title of the other, it might well, as it seems to us, be held that neither mortgagor nor mortgagee was at liberty to neglect the payment, as one step in bettering his condition at the expense of the other, but that the presumption of law should be that the party purchasing did so for the protection of his own interest merely. And so, in general, are the authorities. And it is held that where a purchaser of land subject to a mortgage does not assume or agree to pay the mortgage, no personal relation or obligation subsists between him and the mortgagee, and he owes no duty to the latter to pay the taxes on the land, and hence may acquire a tax deed which will extinguish the rights of the mortgagee. The weight of authority is in favor of the view that a mortgagee cannot purchase the mortgaged property at a tax sale and thus acquire a title which will defeat the rights of the mortgagor, especially where the mortgagee is in possession; but in some states, however, where the mortgage is regarded only as a security for the debt and the legal title is not considered to be in the mortgagee, it has been held that a mortgagee who is not in actual possession may acquire the title by purchase at a tax sale as against the mortgagors."

And Corpus Juris makes a summary of the decisions as follows:

"The lien of a mortgage on land cannot be defeated by the purchase of the mortgaged property at a tax sale, either by the mortgagor or by one who has assumed the mortgage as a purchaser from him, or by another in charge of the property under circumstances indicating fraud or collusion; but where a mortgagor has expressly covenanted to pay the taxes on the mortgaged premises, it was held that he was not thereby prohibited from acquiring a tax title thereon if it did not affect the interests or rights arising from, or accruing under, the mortgage. Likewise, the title of a mortgagor cannot be ousted by a purchase of the mortgaged premises by the mortgagee at a tax sale. Where several parties hold notes secured by the same mortgage, one of such lienholders cannot obtain the fee from the mortgagor in extinguishment of his claim, and, as against the other lienholders, perfect his title by acquiring a tax title under a lien on the land for taxes existing at the time he acquired the fee therein; neither can one of two successive mortgagees of the same land divest the lien of the other by such a purchase. However, it has been held that the mere relation of mortgagee will not prevent the person so related from acquiring title to the mortgaged premises by purchasing at a tax sale, and that a mortgagee could become a purchaser where he was under no duty or obligation to pay the taxes, if he does not use his position as mortgagee to become purchaser, did not purchase in his character as mortgagee, and took no part in connection with the sale except to bid and pay the purchase money, and paid it not qua taxes, but qua purchase money; or if he was not in possession of the property at the time the taxes accrued, or when it was sold under the tax proceedings; but where the mortgagee is allowed to purchase the mortgaged premises at a tax sale, he cannot thereafter set up the title thus obtained against the mortgagor's right to redeem." 61 C. J. 1203.

Mortgages in this island are governed by the Civil Code and the Mortgage Law. A mortgage is an accessory contract. It secures a principal obligation. The mortgagee does not thereby become the owner of the mortgaged property; he does not take possession of it, nor does he assume the obligation to pay the taxes levied thereon by the People of Puerto Rico. The property still belongs to the mortgagor,

who is bound to pay the taxes, unless the mortgagee undertakes to pay them.

This being so, the decisions which uphold the right of a mortgagee who has not bound himself to pay the taxes to purchase the mortgaged property at a tax sale, are applicable in Puerto Rico, such purchase being, of course, subject to the right of redemption granted by law to the owner. It seems advisable to quote at length from at least one of the decisions of the continental courts establishing the doctrine which, in accordance with the law and the facts, we deem applicable to the instant case. We shall select because of its brevity and accuracy the decision in *Jones* v. *Black,* 18 Okla. 344, which is also reported in 11 Ann. Cas. 753, where there is a note summarizing the various cases on this point.

There the Supreme Court of Oklahoma, speaking through Mr. Justice Pancoast, said:

"This case presents but one legal proposition. The issues arise upon a demurrer to the petition, which was sustained by the court below. The question presented is: Can a mortgagee acquire title to the mortgaged premises by his purchase of a tax certificate and obtaining the tax deed therefor so as to cut off the rights of the mortgagor in the premises?

"The cases have been before the various courts in various forms, and, while a casual reading might indicate that there is some conflict in the authorities upon the proposition, yet, after a careful reading of the different statutes and the different cases as presented, the seeming conflict does not, in fact, exist.

"Under the old rule, where the mortgagee held the legal title, he was held not to be able to acquire title through tax sale. The same rule applies to a mortgagee in possession. Under our statute, a mortgagee holds his mortgage as security for the debt only, and where there is no obligation in the contract on the part of the mortgagee to pay the taxes on the property, the authorities are uniform that he may acquire title through tax sale. In this case there was a provision in the mortgage that in case of failure on the part of the mortgagor to pay the taxes, the mortgagee should have the right to pay the same. This provision, however, simply reiterates the right which he would have had without any such provision being con-

tained in the mortgage. The provision does not obligate him to pay the taxes, but it gives him the right to do so upon a failure of the mortgagor to pay. This right the mortgagee would have had without this condition, and it neither broadens nor limits the legal rights of the respective parties. Under the present law and the condition of the parties as they exist in this case, there is no relation of trust or confidence existing between them to preclude the mortgagee from becoming the purchaser at tax sale. The common law attributes of the mortgage have been wholly and entirely set aside. The mortgagee has a mere lien upon the property, but no title. His lien gives him no right of possession. His only remedy is by foreclosure. He is required to pay taxes upon his note and mortgage, and when he performs this obligation, it is all the law requires of him.

''By loaning money to the mortgagor, the mortgagee does not covenant or promise to pay taxes upon the security given, but, on the contrary,.the mortgagor is under obligations to pay the taxes, and it is his duty to protect the lien or security. To allow a mortgagor to refuse to pay taxes upon property which he has given to secure an indebtedness and, after the mortgagee has purchased the property at tax sale, to hold him as a trustee for the benefit of the mortgagor, would be to allow the mortgagor to take advantage of his own wrong. The mortgagee cannot be held liable as having any title in the land, as our statute negatives the idea of the title in a mortgagee. The fact that the mortgagee may pay the taxes and recover the same by foreclosure, does not make it obligatory upon him to do so, nor does the purchase at tax sale create any relation of trust and confidence between him and the mortgagor. 'The principles in relation to dealings between trustee and *cestui que trust,* as adopted by the courts of equity do not apply. Dependence, and the duty of protection, are not involved in this relation, and they may deal subject only to the ordinary principles.' ''

The case of *Cancel* v. *The Registrar of Property, supra,* on which the registrar relies, does not have the scope attributed to it. There a certificate of sale of a property in favor of José Antonio Ríos was presented in the registry. On the back of the instrument there was a notarial act to the effect that Pascasio Cancel, as a mortgage creditor, had redeemed the property upon delivery to Ríos of the sum that the latter had paid as the purchase price.

The registrar denied the record because, since the property had been redeemed by Cancel as a mortgagee, his right was limited to adding to his mortgage credit the money paid.

Feeling aggrieved by that decision, Cancel appealed to this Supreme Court, which, in view of the full record sent up pursuant to a writ issued in furtherance of justice (*auto para mejor proveer*), expressed itself as follow:

" . . . if we thought that Cancel took his certificate to the registrar for the purpose of having the ownership of the estate redeemed by him as a mortgage creditor recorded in his favor, then we would have to agree with the decision of the Registrar of Property of Arecibo denying the record.

"But it appears to us that his intention was a different one, limited to the right granted him by the Internal Revenue Law approved March 14, 1907. (See laws of this year, p. 330.)

" *       *       *       *       *       *       *

"Thinking thus we believe that the purpose of Cancel was to obtain a record on his mortgage credit to the effect that the latter had been increased by $105.50, which was the amount paid for the redeemed property, with interest at the same rate as his mortgage credit, the notice of the attachment which had been made for the sale of the estate for the recovery of the taxes, being also canceled.

"This is what we believe to be proper to guarantee this new right of Cancel and for this reason the decision of the Registrar of Property of Arecibo denying the record should be reversed, and it is ordered that he record the extension of the mortgage credit according to the title presented, in such form as may be proper."

As may be seen, in that case the mortgage creditor exercised his right of redemption, whereas here he asserts that he did not purchase in his character as a creditor, but as an ordinary citizen.

Having disposed of the first assignment of error in the sense that the certificate of sale presented in the registry should be recorded, as such certificate, it will suffice to say, as regards the second assignment, that it is manifest that the instrument can not be recorded as an extension of the mortgage.

■ The third error assigned relates to the curable defect noted. In his argument under this assignment the appellant says:

"According to the Political Code, in a sale for delinquent taxes the only prerequisite is the recording of an attachment pursuant to section 340 of the said Code, which was effected on February 16, 1933, and upon the sale of the attached property the only thing that the collector must do is to issue a certificate of sale of the realty which shall contain all the requisites prescribed by the Political Code, and no formal acceptance or separate instrument by the purchaser is required, as his appearance and bidding at the auction sale, and his payment of the purchase price imply an acceptance of the contract of purchase and sale, apart from the fact that the Political Code does not require such acceptance."

In our opinion, the appellant is right.

For the reasons stated, the decision appealed from must be reversed and the record sought ordered.